[Civ. No. 5949.  Second Appellate District, Division One.—November 20, 1930.]

FRED W. BEETSON, Respondent, v. HOLLYWOOD ATHLETIC CLUB (a Corporation), Appellant.

G. R. Dexter, J. B. Irsfeld and Howard B. Henshey for Appellant.

Mitchell, Silberberg & Davis and H. C. Mabry for Respondent.

HOLLZER, J., *pro tem.*—Defendant prosecutes this appeal from a judgment awarding plaintiff damages, claimed to have been sustained in connection with the disappearance of and damage to plaintiff's automobile while left with the defendant.

The evidence showed that on the night of March 1, 1925, the plaintiff, a member of the defendant club, drove his automobile into a parking place provided for that purpose and operated by the defendant, and delivered the car to an employee of the defendant, who was the attendant in charge. The keys for the car were left therein. At the time of delivering his car the plaintiff signed a slip required for that purpose by the defendant, and the same was retained by the attendant. For this parking service, defendant charged the plaintiff fifteen cents.

On returning about an hour later for his car, plaintiff learned that the same had disappeared and that the parking place had been left without any attendant.

The evidence further disclosed that it was the custom of the attendant, on leaving the parking place, to remove the keys from all of the automobiles and deposit the same in the defendant's office, where they would be obtained by the respective owners as they called for their cars. On the occasion in question, however, the keys which plaintiff had left in his car were not delivered by the attendant to the defendant's office.

Several years previously the defendant's board of directors had adopted a resolution reading: "That in accepting the parking of automobiles of members and guests, the club

is not to be held responsible in case of loss through fire, theft or injury to the car or its contents, *the club using due caution in the protection of automobiles left in its care.*" (Italics ours.)

The attendant who had been in charge of defendant's parking place at the time plaintiff's car was delivered there was not called as a witness. Likewise, the defendant offered no evidence tending to explain how the plaintiff's car was removed from its custody.

Some weeks after its disappearance, plaintiff, through the service of an investigator, learned that his car had been removed to Texas, and he thereupon had the same shipped back to him.

The lower court found that plaintiff's car had been stolen through defendant's negligence while the same was in its care; that the car had been damaged after it had been stolen and before it was returned to plaintiff in the sum of $254.19; that the latter had expended $440.36 in conducting his search for the automobile and on account of freight charges for the return of the same; and also that the plaintiff had sustained further damage in the sum of $350 through the loss of the use of said automobile. Accordingly, plaintiff was awarded judgment in the total sum of $1044.55.

The grounds upon which the defendant seeks a reversal may be summarized under two points: The first is the contention that the evidence is insufficient to establish liability against defendant. Secondly, it is claimed that the court erred in computing the damages allowable to plaintiff.

Upon the question of liability, while it may be said that no case arising out of facts substantially similar to those presented in the action at bar has been decided in California, we have no doubt that, under the law of this state, the delivery by plaintiff of his automobile to the defendant's attendant under the circumstances heretofore stated constituted a bailment of the same for hire, and thereby imposed upon the defendant the duty to exercise reasonable care to preserve the same against loss or damage. (Civ. Code, secs. 1851 and 1852; 4 Cal. Jur., Bailments, sec. 2, p. 3, and sec. 13, p. 21, and cases there cited.)

In a case arising out of facts strikingly similar to those presented here, the appellate division of the New York Supreme Court reached a similar conclusion.

The case referred to was that of *Galowitz* v. *Magner,* 208 App. Div. 6 [203 N. Y. Supp. 421]. There it appeared that the plaintiff drove his automobile into a parking station operated by the defendant, delivered the same to one of the defendant's attendants, paid fifty cents therefor and received a ticket from the attendant. Upon the reverse side of the ticket there was printed in fine print the following: "The person accepting this ticket assumes all risk of accident, and expressly agrees that the management shall not be liable, under any circumstances, for any injury to persons, loss, or damage." When plaintiff returned several hours later for his car he discovered that the same was gone. The proof further showed that the parking space was inclosed with an eight-foot wooden fence, had one entrance and one exit, and that on the day in question there were three attendants looking after the cars.

In the course of his opinion, Mr. Justice Young, speaking for the court, said: "I think, however, it was a bailment for hire. It was, in my opinion, of the same nature as checking parcels, and the disclaimer of liability could only become effective, if brought to plaintiff's knowledge (citing cases). . . .

"Neither the face of the ticket nor the disclaimer of liability printed on the back throws any light on the subject. Its presence on the ticket or stub is quite as consistent with a contract of bailment as with one for mere rental of parking space. It seems to me obvious that plaintiff had the right to believe, from the fact that defendant maintained an inclosed space for parking cars, with an entrance and exit and attendants, that he was paying the parking fee in consideration of care and watchfulness to prevent injury or loss. Otherwise he might almost as well have parked upon the public street and saved the fee.

"The proof in this case is very meager, but is in my opinion sufficient to present a question of fact for the jury. Where a space is inclosed by an eight-foot board fence, for parking cars, with an entrance and an exit, a checking system, and three attendants to look after and take care of

the cars as they came in and went out, the jury might infer that the theft of plaintiff's car could not have occurred had defendant and his employees properly performed their duty. Indeed, it seems to me that such inference is well-nigh irresistible, because someone must have taken out plaintiff's car without presenting a check or ticket therefor, and to permit this was clearly negligent.''

While the judgment rendered in the case cited was set aside, it should be noted that the reversal was ordered upon the ground that the complaint failed to allege that plaintiff's car was lost through the defendant's negligence, and because the trial court instructed the jury that the burden rested upon the defendant to show that the theft did not occur through want of due care on his part.

Again, in the case of *Dalton* v. *Hamilton Hotel Operating Co.*, 242 N. Y. 481 [152 N. E. 268, 270], the court of appeals held that an agreement for gratuitous storage of a prospective tenant's baggage until she could be given possession of an apartment leased constituted a bailment, and that the failure of the hotel to return the trunks upon demand established a *prima facie* case of gross negligence on the part of the hotel operator. The court further held that proof that the trunks had been deposited in a room under constant watch of competent employees was not sufficient alone to rebut the presumption of gross negligence arising from the failure to deliver the trunks. In upholding plaintiff's right to recover, the court of appeals said in part:

''But if we assume that the trunks were placed in the proper depository under the watchfulness provided by the defendant, we do not think that this fact answers the presumption arising in favor of plaintiff on failure to deliver her trunks or satisfactorily explains their disappearance. Presumptively, under this system the trunks should have been in defendant's possession and ready for delivery when called for, and it is the failure of what was to be expected that defendant is called upon to explain. . . . So far as concerns the exemption clause on the checks, independent of any other answer, we do not think it is to be assumed that it was the intention of the parties that it should relieve the defendant from its own gross negligence.''

The cases cited by appellant support the rule that a bailee is required to exercise reasonable care to protect the property deposited with him against loss or damage.

In *Perera* v. *Panama-Pacific Int. Exp. Co.*, 179 Cal. 63 [175 Pac. 454, 456], and *Webber* v. *Bank of Tracy*, 66 Cal. App. 29 [225 Pac. 41], cited by appellant, the bailee was absolved from liability because the evidence in those cases furnished no sufficient basis for any inference of negligence on the part of the bailee.

In the Perera case, however, the Supreme Court declared: "It is true, of course, that evidence of facts and circumstances from which want of ordinary care may reasonably be inferred is sufficient to support a conclusion of negligence, in which event the question of negligence is one for the jury."

On the other hand, applying the decision rendered in *Galowitz* v. *Magner, supra,* it might well be inferred from the facts in the action at bar that the disappearance of plaintiff's car could not have occurred had the defendant's employees properly performed their duty. Indeed, the inference of negligence is well-nigh irresistible from the fact that, upon the occasion in question, the defendant's attendant left its parking place without taking the slightest precaution to protect plaintiff's car against theft. Likewise, it might well be added that had this attendant even taken the precaution of removing the keys from plaintiff's car and depositing the same in defendant's office in accordance with the practice which defendant admits its employees customarily followed when leaving the parking place unattended, it is highly improbable that plaintiff's car would have been taken.

When we come to consider the amount of damages awarded, a more serious question is presented. In their opening brief appellant's counsel say: "Had the theft been due to the negligence of defendant, the loss would have amounted in such case to conversion, and the damages in such case would have been fixed by section 3336 of our Civil Code, reading as follows:

" 'The detriment caused by the wrongful conversion of personal property is presumed to be:

" '1. The value of the property at the time of the conversion, with the interest from that time, or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and

" '2. A fair compensation for the time and money properly expended in pursuit of the property.' "

Where, however, one recovers his property which had been unlawfully taken from him, he is considered as having received it in mitigation of damages, and the measure of damage, in the absence of special damage, is the expense of procuring its return with interest. (*Blewitt* v. *Miller,* 131 Cal. 149, 151 [63 Pac. 157], citing 1 Sutherland on Damages, 239; 3 Sutherland on Damages, 527; 1 Sedgwick on Damages, sec. 58.)

"So where goods are lost by the negligence of the bailee, and the bailor, by the aid of detectives, legal proceedings, and the expenditure of money, recovers some of the property, and repairs such of it as is damaged, he may be allowed to prove, against the objection of the bailee, what expenses were thus incurred. In such a case the bailor was not bound to seek for his property. When the bailee failed, on demand, to deliver it, he became liable for the whole. What was done, therefore, to recover the property, so far as it was successful, was for the bailee's benefit, and he was entitled to credit for the property thus recovered, less the expense of recovering it." (3 Ruling Case Law, Bailments, sec. 80, citing *Jones* v. *Morgan,* 90 N. Y. 4 [43 Am. Rep. 131].)

In the present case, the plaintiff was not only put to the expense of procuring the return of his car, but also was obliged to have the same repaired, and in addition was deprived of its use for sixty-five days.

The only evidence as to the amount expended to procure the return of the car was that furnished by the testimony of one Gilmore, who was employed by plaintiff to investigate what had become of the car and to secure its return. This witness testified that he advanced on behalf of plaintiff the sum of $8 for telegrams; $50 to the sheriff at San Angelo, Texas, the place where the car was finally

located, and also the sum of $326 to the Sante Fe Railway as freight for transporting the car back to Los Angeles, and in addition paid himself $45 for the services he had rendered conducting the investigation to locate the car.

On the other hand, there is nothing in the record to disclose why the sum of $50 was paid to the sheriff at San Angelo, or the necessity for expending $8 for telegrams, nor was it shown that the sum of $45 was a reasonable charge for the services performed by the witness.

Assuming that the last three mentioned items were recoverable as damages, nevertheless the burden rested upon the plaintiff to prove that such expenditures were necessarily made, and that the same were reasonable. In the absence of such proof, we must conclude that there was no basis for allowing the same in the present case.

■ Upon the issue respecting the damage to plaintiff's automobile, the complaint alleged "that said automobile was damaged while out of the possession of the plaintiff, after such bailment and before found by the plaintiff, in the sum of Two Hundred Fifty-four and 19/100 Dollars ($254.19)." In its answer the defendant denied "that said automobile was damaged while out of the possession of the plaintiff, after such bailment or before found by plaintiff, in the sum of Two Hundred Fifty-four and 19/100 Dollars ($254.19), . . . ''

By thus answering in the form of a negative pregnant, defendant admitted that the damage to said automobile was any sum less than $254.19, to wit: $254.18. As the law disregards trifles, this was not sufficient to raise an issue. (*Janeway et al.* v. *Long Beach Co.*, 190 Cal. 150, 153 [211 Pac. 6].)

■ With respect to the damage sustained by plaintiff because of being deprived of the use of said automobile, the trial court found that "plaintiff lost the use of said automobile for the period of two (2) months, to his damage in the sum of three hundred fifty dollars ($350.00)".

Plaintiff was entitled to recover the rental value of his car during the period he was deprived of its use. (*Taylor* v. *Bernheim*, 58 Cal. App. 404, 410 [209 Pac. 55, 58]; *Nahhas* v. *Browning*, 181 Cal. 55 [6 A. L. R. 476, 183 Pac. 442]; *Blodgett* v. *Rheinschild*, 56 Cal. App. 728, 739 [206 Pac. 674].)

The only evidence bearing upon this subject is to be found in the testimony of the plaintiff. According to his testimony, the car which he had delivered to the defendant was "a regular stock Buick sedan automobile, model 1924, which cost approximately $2,300". For a period of about a week immediately following the disappearance of his car, plaintiff hired taxicabs at a total expense of $50, and for a period of two months he hired a Peerless sedan, for which he paid $150 per month.

As observed in the case of *Taylor* v. *Bernheim, supra,* "From the description given in the testimony of the car in question, the court may well have inferred that the rental value of such a car would not be less than the one rented."

However, as already noted, the rental value of the car which plaintiff rented in the present suit for the period during which he was deprived of the use of his own car amounted to $300, whereas the trial court here allowed the plaintiff $350. While the latter sum may have included an item of $50 expended for taxicabs, we know of no authority warranting such an allowance as part of the damages which may be recovered in an action of this character.

For the foregoing reasons, the judgment is modified by deducting from the same the sum of $153, and as thus modified, the judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.