290 So.2d 636

**BIRMINGHAM TELEVISION CORPORA-
TION, a corp., d/b/a WBMG Television,**

v.

**The WATER WORKS, a corp., et al.**

**SC 568.**

Supreme Court of Alabama.

Feb. 28, 1974.

William J. Trussell and James L. Clark, Birmingham, for appellees.

Dunn, Porterfield, McDowell & Scholl, and Thomas E. Baddley, Jr., Birmingham, for appellant.

BLOODWORTH, Justice.

This is an appeal from a summary judgment. The pleadings and depositions in support of the motion for summary judgment disclose that appellant-plaintiff Birmingham Television Corporation (bailor) stored for a consideration certain television equipment with appellees-defendants Harris Transfer Company, Harris Warehouse Company and Harris Transfer and Storage Company (bailees). On the reverse side of the warehouse receipts issued to appellant evidencing the bailment of this equipment there appeared the following:

### PROPERTY WILL BE ACCEPTED BY THIS COMPANY FOR STORAGE ONLY UNDER THE FOLLOWING TERMS, CONDITIONS AND AGREEMENTS:

(A) All charges are due and payable before delivery or transfer of goods.

All property will be stored at owner's risk of loss from fire, water, leakage, vermin, rattage, breakage, shrinkage in weights, accidental or providential causes, strikes, riots or insurrections or from inherent qualities of the goods.

(B) And subject further to the following:

### STANDARD CONTRACT TERMS AND CONDITIONS FOR MERCHANDISE WAREHOUSEMEN

#### ACCEPTANCE—Sec. 1

(a) This contract and rate quotation including accessorial charges endorsed on or attached hereto must be accepted within 30 days from the proposal date by signature of depositor on the reverse side of this contract. In the absence of written acceptance, the act of tendering goods described herein for storage by warehouseman within 30 days, from the proposal date shall constitute such acceptance by depositor.

(b) In the event that goods tendered for storage do not conform to the description contained herein, or conforming goods are tendered for storage after 30 days from the proposal date without prior written acceptance by depositor as provided in paragraph (a) of this section, warehouseman may refuse to accept such goods for storage. If warehouseman accepts such goods for storage, depositor agrees to rates and charges as may be assigned and invoiced by warehouseman and to all terms of this contract.

(c) This contract is deemed cancelled should the described goods not be stored with warehouseman for any period exceeding 180 days.

#### SHIPPING—Sec. 2

Depositor agrees not to ship goods to warehouseman as the named consignee. If, in violation of this agreement, goods are shipped to warehouseman as named consignee, depositor agrees to notify carrier in writing prior to such shipment, with copy of such notice to the warehouseman, that warehouseman named as consignee is a warehouseman and has no beneficial title or interest in such property and depositor further agrees to indemnify and hold harmless warehouseman from any and all claims for unpaid transportation charges, including undercharges, demurrage, detention or charges of any nature, in connection with goods so shipped. Depositor further agrees that, if it fails to notify carrier as required by the next preceding sentence, warehouseman shall have the right to refuse such goods and shall not be liable or responsible for any loss, injury or damage of any nature to, or related to such goods. Depositor agrees that all promises contained in this section will be binding on depositor's heirs, successors and assigns.

#### TENDER FOR STORAGE—Sec. 3

All goods for storage shall be delivered at the warehouse properly marked and packed for handling. The depositor shall furnish at or prior to such delivery, a manifest showing marks, brands or sizes to be kept and accounted for separately, and the class of storage desired.

#### STORAGE PERIOD AND CHARGES—Sec. 4

(a) All goods are stored on a month to month basis. All charges for storage are per package or other agreed unit per month.

(b) A storage month shall extend from a date in one calendar month to, but not including, the same date of the next and all succeeding months, except as provided in paragraph (c) of this section. All storage charges are due and payable on the first day of the storage month.

(c) When mutually agreed by the warehouseman and the depositor a full month's storage charge will apply on all goods received between the first and the 15th, inclusive, of a calendar month; one-half month's storage charge will apply on all goods received between the 16th and last day, inclusive, of a calendar month, and a full month's storage charge will apply to all goods in storage on the first day of the next and succeeding calendar months. All storage charges are due and payable on the first day of storage for the initial month and thereafter on the first day of the calendar month.

## TRANSFER, TERMINATION OF STORAGE, REMOVAL OF GOODS—Sec. 5

(a) Instructions to transfer goods on the books of the warehouseman are not effective until delivered to and accepted by warehouseman, and all charges up to the time transfer is made are chargeable to the depositor of record. If a transfer involves rehandling the goods, such will be subject to a charge. When goods in storage are transferred from one party to another through issuance of a new warehouse receipt, a new storage date is established on the date of transfer.

(b) The warehouseman reserves the right to move, at his expense, 14 days after notice is sent by certified or registered mail to the depositor of record or to the last known holder of the negotiable warehouse receipt, any goods in storage from the warehouse in which they may be stored to any other of his warehouses; but if such depositor or holder takes delivery of his goods in lieu of transfer, no storage charge shall be made for the current storage month. The warehouseman may, without notice, move goods within the warehouse in which they are stored.

(c) The warehouseman may, upon written notice to the depositor of record and any other person known by the warehouseman to claim an interest in the goods, require the removal of any goods by the end of the next succeeding storage month. Such notice shall be given to the last known place of business or abode of the person to be notified. If goods are not removed before the end of the next succeeding storage month, the warehouseman may sell them in accordance with applicable law.

(d) If warehouseman in good faith believes that the goods are about to deteriorate or decline in value to less than the amount of warehouseman's lien before the end of the next succeeding storage month, the warehouseman may specify in the notification any reasonable shorter time for removal of the goods and in case the goods are not removed, may sell them at public sale held one week after a single advertisement or posting as provided by law.

(e) If as a result of a quality or condition of the goods of which the warehouseman had no notice at the time of deposit the goods are a hazard to other property or to the warehouse or to persons, the warehouseman may sell the goods at public or private sale without advertisement on reasonable notification to all persons known to claim an interest in the goods. If the warehouseman, after a reasonable effort is unable to sell the goods he may dispose of them in any lawful manner and shall incur no liability by reason of such disposition.

## HANDLING—Sec. 6

(a) The handling charge covers the ordinary labor involved in receiving goods at warehouse door, placing goods in storage, returning of goods to the warehouse door, and unless otherwise specified, includes the unloading of regular box cars at warehouse door. Handling charges are due and payable on receipt of goods.

(b) Labor for unloading goods from other than regular box cars at warehouse door, additional expenses incurred by the warehouseman in unloading damaged goods, and additional expenses in unloading cars not at warehouse door will be subject to charge.

(c) Labor and materials used in loading rail cars or other vehicles are chargeable to the depositor.

(d) When goods are ordered out in quantities less than in which received, the warehouseman may make an additional charge for each order or each item of an order.

(e) The warehouseman shall not be liable for demurrage, delays in unloading inbound cars, or delays in obtaining and loading cars for outbound shipment unless warehouseman, has failed to exercise reasonable care.

## DELIVERY REQUIREMENTS—Sec. 7

(a) No goods shall be delivered or transferred except upon receipt by the warehouseman of complete instructions properly signed by the depositor. However, when no negotiable receipt is outstanding, goods may be delivered upon instructions by telephone in accordance with a prior written agreement, but the warehouseman shall not be responsible for loss or error occasioned thereby.

(b) When a negotiable receipt has been issued no goods covered by that receipt shall be delivered, or transferred on the books of the warehouseman, unless the receipt, properly indorsed, is surrendered for cancellation, or for indorsement of partial delivery thereon. If a negotiable receipt is lost or destroyed, delivery of goods may be made only upon order of a court of competent jurisdiction and the posting of security approved by the court as provided by law.

(c) When goods are ordered out a reasonable time shall be given the warehouseman to carry out instructions, and if he is unable because of acts of God, war, public enemies, seizure under legal process, strikes, lockouts, riots and civil commotions, or because of loss or destruction of goods for which warehouseman is not liable, or because of any other excuse provided by law, the warehouseman shall not be liable for failure to carry out such instructions and goods remaining in storage will continue to be subject to regular storage charges.

## EXTRA SERVICES (SPECIAL SERVICES)—Sec. 8

(a) Warehouse labor required for services other than ordinary handling and storage will be charged to the depositor.

(b) Special services requested by depositor including but not limited to compiling of special stock statements; reporting marked weights, serial numbers or other data from packages; physical check of goods; and handling transit billing will be subject to a charge.

(c) Dunnage, bracing, packing materials or other special supplies, may be provided for the depositor at a charge in addition to the warehouseman's cost.

(d) By prior arrangement, goods may be received or delivered during other than usual business hours, subject to a charge.

(e) Communication expense including postage, teletype, telegram, or telephone, will be charged to the depositor at cost if such concern more than the normal inventory reporting or if, at the request of the depositor, communications are made by other than regular United States Mail.

**BONDED STORAGE—Sec. 9**

(a) A charge in addition to regular rates will be made for merchandise in bond.

(b) Where a warehouse receipt covers goods in U. S. Customs bond, such receipt shall be void upon the termination of the storage period fixed by law.

**MINIMUM CHARGES—Sec. 10**

(a) A minimum handling charge per lot and a minimum storage charge per lot per month will be made. When a warehouse receipt covers more than one lot or when a lot is in assortment, a minimum charge per mark, brand, or variety will be made.

(b) A minimum monthly charge to one account for storage and/or handling will be made. This charge will apply also to each account when one customer has several accounts, each requiring separate records and billing.

**LIABILITY AND LIMITATION OF DAMAGES—Sec. 11**

(A) THE WAREHOUSEMAN SHALL NOT BE LIABLE FOR ANY LOSS OR INJURY TO GOODS STORED HOWEVER CAUSED UNLESS SUCH LOSS OR INJURY RESULTED FROM THE FAILURE BY THE WAREHOUSEMAN TO EXERCISE SUCH CARE IN REGARD TO THEM AS A REASONABLY CAREFUL MAN WOULD EXERCISE UNDER LIKE CIRCUMSTANCES AND WAREHOUSEMAN IS NOT LIABLE FOR DAMAGES WHICH COULD NOT HAVE BEEN AVOIDED BY THE EXERCISE OF SUCH CARE.

(B) GOODS ARE NOT INSURED BY WAREHOUSEMAN AGAINST LOSS OR INJURY HOWEVER CAUSED.

(C) THE DEPOSITOR DECLARES THAT DAMAGES ARE LIMITED TO _____, PROVIDED, HOWEVER, THAT SUCH LIABILITY MAY AT THE TIME OF ACCEPTANCE OF THIS CONTRACT AS PROVIDED IN SECTION 1 BE INCREASED ON PART OR ALL OF THE GOODS HEREUNDER IN WHICH EVENT A MONTHLY CHARGE OF _____ WILL BE MADE IN ADDITION TO THE REGULAR MONTHLY STORAGE CHARGE.

**NOTICE OF CLAIM AND FILING OF SUIT—Sec. 12**

(a) Claims by the depositor and all other persons must be presented in writing to the warehouseman within a reasonable time, and in no event longer than either 60 days after delivery of the goods by the warehouseman or 60 days after depositor of record or the last known holder of a negotiable warehouse receipt is notified by the warehouseman that loss or injury to part or all of the goods has occurred, whichever time is shorter.

(b) No action may be maintained by the depositor or others against the warehouseman for loss or injury to the goods stored unless timely written claim has been given as provided in paragraph (a) of this section and unless such action is commenced either within nine months after date of delivery by warehouseman or within nine months after depositor of record or the last known holder of a negotiable warehouse receipt is notified that loss or injury to part or all of the goods has occurred, whichever time is shorter.

(c) When goods have not been delivered, notice may be given of known loss or injury to the goods by mailing of a registered or certified letter to the depositor of record or to the last known holder of a negotiable warehouse receipt. Time limitations for presentation of claim in writing and maintaining of action after notice begin on the date of mailing of such notice by warehouseman.

**Additional Terms and Conditions Applicable to this Contract and Rate Quotation.**

Nothing entered hereon shall be constructed to extend the warehouseman's liability beyond the standard of care specified in Section 11 above.

———◆———

The sole issue on this appeal is whether or not the trial court was correct in granting a motion for summary judgment in favor of the appellees based upon the warehouse receipt provision limiting the time within which action may be maintained by the appellant against the appellees for damages to the bailed goods. We conclude that the trial court erred herein and reverse and remand.

It appears that on or about April 24, 1971, a water main at or near the appellees' warehouse burst, flooding the warehouse and damaging appellant's equipment. It is disputed precisely what date appellant was notified of the occurrence; however, a representative of appellant did come and inspect the damage within a week or ten days.

Almost a year later, on April 18, 1972, appellant filed suit against the defendants The Water Works, The Water Works Board, Harris Transfer Company, Harris Warehouse Company and Harris Transfer and Storage Company charging that through the defendants' joint and concurring negligence the stored equipment was damaged. Appellees-bailees filed a motion for summary judgment setting up a nine-month limitation as a bar to the action

against them.[1] (The nine-month limitation appears at the bottom of the copy hereinabove set forth under the heading "NOTICE OF CLAIM AND FILING OF SUIT—Sec. 12".) Motion for summary judgment was granted, whereupon appellant appealed. The Water Works is not a party to this appeal. The trial court directed the entry of final judgment as to appellees in accordance with Rule 54(b), Alabama Rules of Civil Procedure.

Appellant makes three arguments on this appeal: first, that the law permits warehousemen to limit time when suit may be brought on a bailment only by reasonable provisions and that reasonableness is a question of fact for the jury; second, that even if reasonableness is a question of law, nine months is unreasonable as a matter of law; and third, that the trial court erred in holding appellant to be bound by the nine-month limitation because there was no evidence that the provision was specifically called to appellant's attention, that appellant cannot be charged with knowledge of the contract terms, and consequently that there was no meeting of the minds on the bailment contract.

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56 of the Alabama Rules of Civil Procedure; 6 Moore's Federal Practice, § 56.04(1) (2d ed., 1972); 10 Wright & Miller, Federal Practice and Procedure, § 2712 (1973).

■ As applied to the case at bar, we think there existed for the jury's determination a genuine issue of fact as to whether the conditions of bailment set forth on the reverse side of the warehouse receipt were accepted by the appellant-bailor so as to become part of the bailment contract.

■ The case of Kravitz v. Parking Service Co., 29 Ala.App. 523, 199 So. 727 (1940), cert. denied, 240 Ala. 467, 199 So. 731 (1941), involved a clause limiting a bailee's liability (found on the reverse side of a ticket given to the bailor identifying the bailed property). The Court of Appeals stated the law as follows:

"The parties to a bailment, however, may limit liability by special contract provided such diminishment of liability is not violative of law or public policy. 8 C.J.S. Bailments § 26c, pp. 264, 265.

*"Such special provision* in a contract of bailment *limiting bailee's liability*, to be effective, *must be known to, or brought to the notice of, the bailor, and be assented to by him.* 8 C.J.S. Bailments § 26c; p. 264, 6 Am.Jur. pp. 271, 272, Sec. 177. It is axiomatic that in bailments, as in other contracts, there must be a meeting of minds thereon and assent of both parties thereto; and a disclaimer of liability can only become effective if brought to the bailor's knowledge. 8 C.J.S. and 6 Am.Jur., supra; Beetson v. Hollywood Ath. Club, 109 Cal.App. 715, 293 P. 821; Galowitz v. Magner, 208 App.Div. 6, 203 N.Y.S. 421, 422.

"More specifically, to the case at bar, the rule of modern authorities is that the bailor is not chargeable with notice of special provisions diminishing liability of the bailee which appear upon something not apparently related to the bailment contract itself or given to the bailor ostensibly as a ticket of identification of the bailed property, unless called to his attention or known to him. 6 Am.Jur. pp. 274–5, Sections 178, 179. Accordingly when appellant-bailor delivered 'possession, custody and control' of his automobile to appellee-bailee 'for a reward'—i. e. compensation for its safe-keeping— there was imposed on appellee the duty to exercise reasonable care to protect the

---

1. The Water Works was charged with negligence in allowing the water main to break. The bailees were charged with negligence in failing to store the goods in a safe place, inter alia.

property and upon request, within the terms of the contract when the condition of the bailment shall have been terminated, to redeliver it to the appellant. For negligent breach of this duty there was consequent liability.

"The receipt by appellant of the 'ticket' did not bind him to recitals of the disclaimer of liability on its reverse side unless known to him or brought to his notice or attention, thereby bringing such provision within and making it part of the terms of the bailment. Goldstein v. Harris, 24 Ala.App. 3, 130 So. 313, certiorari denied 221 Ala. 612, 130 So. 315; Marine Ins. Co., etc. v. Rehm, La.App., 177 So. 79; Beetson v. Hollywood Ath. Club, supra; Galowitz v. Magner, supra; 8 C.J.S. and 6 Am.Jur., supra." · [Emphasis ours.]

Reviewing the facts in the instant case in light of the above stated principles, we find that a genuine issue of fact exists as to whether the terms on the reverse side of the warehouse receipt were accepted by the appellant-bailor and thereby became a part of the contract of bailment. Neither the motion for summary judgment nor appellees' pleas state whether the terms set forth on the reverse side of the warehouse receipt (which purport to materially modify both the common-law rights and obligations of bailor and bailee as well as the statutory provisions respecting limitation of actions) were called to the appellant's attention and were accepted by it.

■ Nor do we think that such knowledge on appellant's part can be presumed from the issuance of the warehouse receipt itself. The front of the warehouse receipt appears to be just that—a receipt identifying the bailed goods and listing charges—nothing more. No part of the contract appears on the face of the receipt. No notation appears on the face of the receipt advising the bailor to "see reverse side." Nothing on the face of the receipt in any way gives notice that the receipt is a contract of bailment which materially alters the rights of the parties.

Yet, we note that in the form for "Standard Contract Terms and Conditions for Merchandise Warehousemen, approved and promulgated by the American Warehousemen's Association," the contract terms commence on the face of the receipt, with a notation that the terms are "continued" on the reverse side and a place for a signature by the bailor showing acceptance of the terms. See U.L.A. UCC § 7–202 Form 3.

■ As was stated in 6 Am.Jur., p. 274, and quoted approvingly by the then Court of Appeals in Kravitz v. Parking Service Co., supra, 199 So. at p. 730:

"'In accordance with the foregoing principle, the general rule supported by the modern authorities appears to be that the bailor, *unless his attention is called to the fact that such conditions are intended as a part of the contract, is not charged with notice, where he has no actual knowledge, of provisions limiting liability which appear upon something not apparently related to the contract itself, or given to the bailor ostensibly for some other purpose.* There is authority which justifies the rule on the ground, among others, that the bailee, if he wishes to qualify his contract, should do so in an unmistakable manner, and *it is not reasonably to be expected, nor is the bailor required to anticipate, that important terms of a contract will be found upon what is accepted merely as a means of identification or for some other purpose which to a reasonable man would not appear to be germane to the agreement itself.*'" (Emphasis supplied by the Court of Appeals.)

We further note that appellant did not sign the purported contract of bailment on the reverse side of the warehouse receipt; nor is there anything in the record to reflect that appellant orally acknowledged and accepted these terms and conditions as being the contract of bailment.

■ Appellees argue that appellant's act of leaving the goods with the appellees ·

constituted an acceptance of the terms on the reverse side of the warehouse receipt. Section 1(a) of the purported contract does provide that "the act of tendering goods described herein for storage by the warehouseman within 30 days from the proposal date shall constitute such acceptance by depositor."

While the acts of a party may under some circumstances be such as to constitute an acceptance of a contract, surely such could not be the case unless the acting party is shown to have had knowledge of the contract. Certainly, it would be unreasonable to interpret the act of tendering goods for bailment as an acceptance of specific contract terms where the bailor is not shown to have had knowledge or notice of the existence of said contract terms. 17 C.J.S. Contracts § 41g, pp. 672-3. In the usual circumstances, the tendering of goods creates only a common law bailment.

Looking to appellees' Plea Six in this cause, appellees aver that the delivery of the receipts containing the purported contract *followed* appellant's depositing the equipment for storage. An act which precedes notice of the contract (assuming only for purposes of argument such receipt did give appellant notice) cannot be reasonably interpreted as an acceptance of said contract. 17 C.J.S. Contracts § 41g, p. 674.

Nor can appellant's subsequent retention of the receipt be interpreted as an acceptance of the terms and conditions on the reverse side. Again, as the court stated in Kravitz v. Parking Service Co., at 199 So. 731, quoting with approval 8 C.J.S. Bailments § 26c, p. 266 ff.:

" 'Where, however, the bailor receives and retains the ticket without knowing that it contained any special terms or conditions and without his attention being called to that fact, and on the assumption that the ticket was merely a token or means of identifying his property, the majority of cases hold that such retention of the ticket does not constitute an acceptance of the terms therein and so he is not bound by the provisions for limited liability, on the theory that the minds of the parties never met: hence, the special contract was never entered into. The mere fact that the bailor examined the ticket sufficiently to know that there was printed matter thereon, and had opportunity to examine it critically, and had capacity to understand the meaning of it still does not make him chargeable with notice of the special provisions therein, for he is under no legal duty to read such matter, since, as has been stated, the ticket is considered primarily as a token or means of identification which is to be surrendered when the property is redelivered.' "

It is thus that we hold only that, under the facts of this cause as they appear in the record at this early stage of the proceedings, we cannot say that as a matter of law appellant accepted the terms and conditions on the reverse side of the warehouse receipt as part of the contract of bailment. At the very least, it appears to be a question of fact for the jury as to whether or not appellant had actual notice, or under the circumstances should be charged with notice, of the terms and conditions on the reverse side of the warehouse receipt, most notably the requirement that suit be brought within nine months rather than the usual six years.

Having concluded that there exists at least one genuine issue of fact for the jury's determination, we find it unnecessary to consider the other issues argued on this appeal.

We, therefore, conclude that the trial court erred in granting the motion for summary judgment in favor of appellees Harris Transfer Company, Harris Warehouse Company and Harris Transfer & Storage Company and that the same is due to be reversed and remanded.

Reversed and remanded.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.