This is an appeal from a summary judgment for defendants The Advertiser Company and David Bronner in a defamation suit seeking compensatory and punitive damages. We reverse and remand.
Defendant David Bronner, Finance Director of the State of Alabama and by virtue of that position a member of the State of Alabama Building Commission, acting within his official capacity as Chairman of the State Building Commission's Executive Committee on Personnel and Finance, initiated an investigation into alleged abuses and misconduct within the Commission. As a result of this investigation and the Committee's examination of the Commission, six Commission employees, including plaintiffs William Wyatt, the Deputy Director of Technical Staff, and David Fulton, a building inspector, were fired.
With regard to these dismissals, defendant Bronner held a press conference May 29, 1979, during which he issued a press release, made some additional statements, and answered questions from members of *Page 535 
the assembled press, which included a representative of defendant Advertiser. The same day both plaintiffs were notified of their dismissal by letters from the Committee. On May 30, the Advertiser published an article in its morning edition concerning the investigation and the dismissals.
As a result of the press release, additional statements made at the press conference, and the subsequent newspaper article, Wyatt, Fulton and others not involved in this appeal filed separate complaints seeking compensatory and punitive damages for libel and slander against Bronner and the Advertiser. Bronner and the Advertiser moved to dismiss on a number of grounds. Certain of these grounds were denied and a hearing was set on the remaining grounds. Affidavits were filed by both sides and after arguments the trial court granted summary judgments for both defendants. That court held that Bronner's statements were qualifiedly privileged and that there was no evidence in the record indicating actual malice. Accordingly, the court found that the Advertiser's report of the press conference was fair and that Bronner's privilege also protected the newspaper. Wyatt and Fulton appeal.
The basic issue presented by this case is whether summary judgment was appropriate. Prior to any resolution of this issue, however, an examination of the alleged defamatory statements is necessary.
The press release issued by Bronner stated the following:
 A financial investigation authorized by Title 41 of the Code of Alabama has been conducted into the Alabama Building Commission.
 The investigation was conducted by the Examiners of Public Account, the Department of Public Safety and the Finance Office, which included taking sworn deposition from employees of the Building Commission, architects, contractors and testing firms from throughout Alabama.
 As a result of this financial investigation, evidence of questionable activities and management was received relating to the following:
 (1) The utilization of state employees on state time to do private business.
 (2) The discovery of employees on the payroll who provided little or no service to the state.
 (3) Allowing and/or initiating construction change orders resulting in contractors receiving greater profits.
 (4) The utilization of gratuities and/or agents in order to secure state business.
 Based on the information produced by the financial investigation and a thorough review of the qualifications and past performance of the present Building Commission personnel, the "Personnel and Finance Committee" of the Building Commission discharged six employees.
 All results of the investigation will be turned over to the Attorney General to be utilized as he sees fit.
In his affidavit, Bronner stated the following concerning his comments at the press conference:
 In response to a question, I gave the names of the six employees referenced in the statement — names which included plaintiffs Wyatt and Fulton. . . .
 At no time did I state that any charges had been or would be lodged against them. In fact, when asked by a reporter what charges had been made against any specific individuals, I answered, "What charges? I have made no charges about anyone. As far as the Committee is concerned, they were dismissed because of qualifications and performance."
The article published by the Advertiser in response to the press conference reads, in pertinent part, as follows:
 The director, deputy director and four other employees of the State Building Commission were fired Tuesday in the wake of an investigation into mishandling of building contracts and state work on private property.
 Finance Director David Bronner said Building Commission Director Hugh Adams, Deputy Director William Wyatt, Energy Division chief John Cluck and three *Page 536 
building inspectors were fired by the commission's executive committee after the investigation uncovered widespread abuses in the department.
 Bronner directed the six-week investigation by members of the Examiners of Public Accounts, the Department of Public Safety, and the Finance Department.
 The results were turned over to Attorney General Charlie Graddick for further investigation.
 W.G. Stevenson, a professional engineer and veteran employee of the commission, was appointed temporary director of the department. Other vacancies will be filled later, but Bronner said some of the vacancies will probably remain unfilled.
 The finance director said one of the fired building inspectors had not turned in an inspection report in seven years.
 The dismissed inspectors were identified as David Fulton, Ray Martin and Howard Wilson.
 Bronner said the investigation uncovered evidence of questionable activities and management in four areas:
 — The use of state employees on state time to do private business.
 — The discovery of employees on the payroll who provided little or no service to the state.
 — Allowing or initiating construction change orders resulting in contractors receiving greater profits.
 — The use of gratuities and agents in order to secure state business.
 Contractors and architects wanting to do business with the state were told they would have to get an agent with political influence before they could get a state contract, Bronner said. The contractor or architect negotiated with the agent to use his influence, the finance director added.
 But contractors and architects who used agents in the past would not be barred from doing business with the state, he said.
 "This is more a problem of the state than of the architects and contractors," he said. "They had to go through the system, and the system was bad."
 Bronner said in reply to questions that none of the private work involved the new home of former Gov. George Wallace or property of his relatives.
 The finance director declined to answer when asked if the private work involved property belonging to any of the dismissed employees.
 Change orders were freely given with the result that contractors could bid low on a project and then add unbid modifications to increase the price to a more profitable level, he said.
 The investigators examined commission activities over a five- or six-year period during which contracts involving millions of dollars in school and other building construction were issued.
 . . . Wyatt was appointed to the commission staff as deputy director in 1971.
 . . . Bronner said the dismissed employees were not given a chance to resign because they knew for at least two weeks they were being investigated and had not resigned.
This article was accompanied by a headline in bold type which stated: "Officials Fired Following Probe."
The letters of dismissal to both plaintiffs simply informed them that the Committee had met "to review qualifications and performance of Commission employees" and that their (plaintiffs') employment had been thereby terminated.
In an action for defamation, an initial determination of the status of the allegedly defamed person as a public official, public figure, or a private individual must be made. E.g.,American Benefit Life Ins. Co. v. McIntyre, 375 So.2d 239 (Ala. 1979). This is a question of law for the trial judge.Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597
(1966), Mobile Press Register, Inc. v. Faulkner, 372 So.2d 1282
(Ala. 1979).
In Mobile Press Register, Inc., supra, this Court stated: *Page 537 
 This issue [status] must be resolved first because the manner of its resolution determines what elements of proof are necessary for recovery. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny mandate that no public figure may recover compensatory or punitive damages for libel unless actual malice as defined in Sullivan is proved: a publication made with actual knowledge of its falsity or made with reckless disregard of its truth or falsity. If plaintiff be a private figure, he or she need not prove Sullivan malice unless punitive damages are claimed. Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). (footnotes omitted)
As Justice Almon noted in the recent decision of Gray v.WALA-TV, 384 So.2d 1062 (Ala. 1980): "This actual malice standard was further elaborated on in St. Amant v. Thompson,390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); there it was stated that reckless disregard requires ". . . sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication."
Privilege is another issue which bears directly upon the issue of proof of malice.
Bronner contends that the court below was correct in finding that he was conditionally privileged to make public the results of his department's investigation. The test in this jurisdiction for determining whether a conditional privilege exists is as follows:
 "`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.'"
Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369,98 So. 290 (1923).
 The question of whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge.
Willis, supra.
Although the duties of the State Finance Director as set out in Title 41, Code 1975, do not specifically include informing the public of the results of statutorily prescribed investigations of state departments and agencies, we conclude that this activity comes within the penumbra of his official duties. The public has a general interest in the results of investigations disclosing governmental abuse or mismanagement. We, therefore, agree with the trial judge's determination that Bronner was cloaked with a conditional privilege.
This Court has further stated that "[w]here a communication is conditionally privileged, it is free from the legal imputation of malice and is actionable only if there is actual malice." Willis v. Demopolis Nursing Home, Inc., supra.
It is unclear from the record as to how the trial judge viewed the status of Wyatt and Fulton. As New York Times v.Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny have mandated, the threshold question in a defamation case is the determination of the status of the allegedly defamed person as a public official, public figure or a private individual. This issue must be resolved before the court can determine what elements of proof of malice are required. The trial judge did not address the issue of status, and instead, decided the case on the basis of Bronner's and the Advertiser's qualified privilege. Our cases have held that once a qualified privilege has been found to exist, the plaintiff must allege and prove actual or express *Page 538 
malice in order to recover. Browning v. Birmingham News,348 So.2d 455 (Ala. 1977); Willis v. Demopolis Nursing Home, supra;O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152 (1974).
Since Sullivan and its progeny have redefined actual malice in defamation cases brought by public officials or public figures, the reference to actual malice without further distinction has caused a considerable amount of confusion and ambiguity in interpretation and application of the two different standards of malice. In this jurisdiction actual or express malice in its traditional sense "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like." Kenney v. Gurley,208 Ala. 623, 95 So. 34 (1923).
Prior to Sullivan, the preceding standard of actual malice was the only standard. Sullivan, however, redefined an old term to require a new and more stringent standard of proof in compliance with constitutional standards. "Actual malice" in its constitutional sense, therefore, means "with knowledge that it [the publication] was false or with reckless disregard of whether it was false or not." Sullivan.
It is apparent from the record that the trial judge fell prey to the confusion created by the interchangeable use of the single term "actual malice" to convey two separate concepts. The trial judge stopped short of a crucial determination in failing to reach the issue of the plaintiffs' status, and held that "actual malice" in conjunction with the privilege defense need only be shown in the traditional sense. Willis v.Demopolis Nursing Home, O'Barr v. Feist, Kenney v. Gurley. This would have been correct prior to Sullivan and its progeny, whether the plaintiffs were public or private persons, and still continues to be correct as to private individual plaintiffs.
Subsequent to Sullivan, however, it is mandatory that the plaintiff's status be determined initially, in order to next determine whether traditional malice or Sullivan malice must be shown. We hold, therefore, that the trial court erred in failing to make this initial determination.
Finally, we reach the basic issue presented by this appeal — whether summary judgment was appropriate under the particular circumstances of this case. The law in this jurisdiction, as set out below, is well settled as to the basic principles which govern in a review of a grant or denial of summary judgment.
 The party moving for summary judgment must clearly show, i.e., has the burden to show, that the other party could not recover "under any discernible circumstances." Folmar v. Montgomery Fair Company, Inc., 293 Ala. 686, 309 So.2d 818 (1975); see also, Ray v. Midfield Park, Inc., 293 Ala. 609, 308 So.2d 686 (1975).
 A motion for summary judgment may be granted only when there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law. Birmingham Television Corporation v. Water Works, 292 Ala. 147, 290 So.2d 636 (1974).
 The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. Kress Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
 Likewise, we consider the "Scintilla Rule" in connection with summary judgment. We held in Folmar v. Montgomery Fair Company, Inc., supra, that if there is a scintilla of evidence produced in plaintiff's favor on the issue of defendant's negligence, then summary judgment will not lie. As the majority of this Court pointed out therein, the plaintiff might escape having summary judgment rendered against him, yet still suffer the ignomy of defeat by way of directed verdict.
Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975). *Page 539 
In Loveless, we also adopted with approval the following statement by the U.S. District Court in Goldwater v. Ginzburg,261 F. Supp. 784 (1966), aff'd 414 F.2d 324 (2nd Cir.), cert. denied, 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695:
 The issue of actual malice on the part of defendants seems peculiarly inappropriate for disposition by summary judgment because it concerns "motive, intent, and subjective feelings and reactions."
Bronner and the Advertiser, as the moving parties, had the burden of proving the absence of a genuine issue as to any material fact. We find that they failed to meet this burden.
In the press release (set out previously) Bronner listed four categories of "questionable activities and management" which were discovered as a result of the investigation. According to Bronner's own affidavit, however, of these four categories only number two, the discovery of employees on the payroll who provided little or no service to the state, applied to Fulton, and only number four, the utilization of gratuities and/or agents in order to secure state business, directly applied to Wyatt. Bronner further stated, however, that because of Wyatt's supervisory position, "the responsibility of misconduct, inefficiency and mismanagement attributable to employees under his supervision which continued uncorrected by Wyatt, must be charged to him." In his affidavit, Bronner stated that: in response to a press question he gave the names of the six Commission employees who were fired; at no time did he make any charges about anyone — to the contrary when asked what charges had been made he responded "What charges? I have made no charges. . . ."; and as far as the committee was concerned the dismissals were based on qualifications and performance.
In their affidavits, both Wyatt and Fulton denied that they were guilty of any wrongdoing and stated that they were unaware of any allegations or charges against them until they read the newspaper article the morning following their discharge. Both of their letters of dismissal merely stated that their employment had been terminated based on qualifications and performance. Also Wyatt stated: "I have personally discussed my job performance with the defendant Bronner prior to my dismissal. At no time did the defendant Bronner make any accusation to me or state in any fashion that I had done anything wrong or that I was not performing my job responsibilities in a satisfactory manner. In fact, his statements to me were to the contrary."
Both contend that the article charged them with criminal activity and that the average lay reader would have interpreted the article to mean that each of the named dismissed employees was guilty of all four categories of questionable activities. In McGraw v. Thomason, 265 Ala. 635, 93 So.2d 741 (1957), we held:
 In determining their actionable character, the printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them. A forced construction is not to be put upon them in order to relieve the defendant from liability, nor are they to be subjected to the critical analysis of a trained legal mind, but [they] must be construed and determined by the natural and probable effect on the mind of the average lay reader.
In light of the preceding authority we find that the article and accompanying headline presented a genuine issue as to a material fact as to whether these words imputed criminal activity and guilt of all four categories of misconduct to both Wyatt and Fulton. Loveless v. Graddick.
Furthermore, they (Wyatt and Fulton) contend that the statements were false and that Bronner knew they were false when he made them. Because of the preceding contradictions in the affidavits of the parties, we find that there is a genuine issue as to a material fact presented here. For these reasons summary judgment was inappropriate for defendant Bronner. *Page 540 
As to defendant Advertiser, we find as did the trial judge, that the Advertiser was protected by Bronner's conditional privilege to the extent that it reported fairly and accurately the information released at the press conference. We find, however, that from the record before us a genuine issue as to a material fact existed, making the grant of summary judgment for defendant Advertiser also inappropriate. In American BenefitLife Ins. Co. v. McIntyre, supra, we held that a news reporter's focusing upon particular portions of a financial report (concerning plaintiff insurance company's financial status) to the exclusion of other relevant portions of the same report could present a genuine issue of a material fact which should be resolved by trial. We find similar factual assertions in the record here. Bronner states in his affidavit that he made it clearly known that the employees were discharged because of qualifications and performance; however, the words "qualifications and performance" did not appear anywhere within the article, nor was there any allusion to this reason for dismissal. Moreover, we do not find in the record any evidence whereby it can be determined that the Advertiser made any independent investigation as to the truth or falsity of Bronner's statements.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON and SHORES, JJ., concur.
EMBRY, J., concurs in the result.