THOMPSON,
Presiding Judge, concurring specially.
I agree that Benjamin L. Little failed to demonstrate that Consolidated Publishing Company and Megan Nichols (collectively “CPC”) acted with “constitutional malice,” also referred to as actual malice, in publishing the allegedly defamatory statements. I write specially to point out that the published statements also involved *528 matters of public concern that are entitled to heightened scrutiny.
“In actions for defamation, there must be an initial determination by the trial judge in regard to the status of the allegedly defamed person as a public official, a public figure, or a private individual. Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). Furthermore, where it is determined that a private individual is alleging defamation, there must be a determination of whether the defamatory speech involves a matter of public concern. Philadelphia Newspapers, Inc. v. Hepps, [475 U.S. 767 (1986)]. These determinations are questions of law for the trial judge. Fulton. These issues must be resolved first, because the manner of their resolution determines what elements of proof are necessary for recovery. Mobile Press Register, Inc. v. Faulkner, 372 So.2d 1282 (Ala.1979), citing New York Times Co. v. Sullivan, [376 U.S. 254 (1964) ].”
Ex parte Rudder, 507 So.2d 411, 416 (Ala.1987).
In cases involving First Amendment disputes, like the instant case, courts are often called upon to balance competing important interests: allowing the continuance of a “profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks,” New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), “without unduly sacrificing the individual’s right to be free of unjust damage to his reputation.” Edwards v. National Audubon Soc’y, Inc., 556 F.2d 113, 115 (2d Cir.1977).
In this case, Little, an Anniston city councilman, asserted that CPC acted with constitutional malice in publishing a statement that another councilman, John Spain, made: that there was a “buzz in the city that Little had or has a personal relationship with [Yolanda] Jackson [the person who conducted the human resources audit at issue] and that’s why he pushed for her hiring last year.” Little asserted that the rumor was false and that, in publishing Spain’s statement, CPC defamed him.[4] CPC defended publication of the statement on several grounds, including that it had accurately and truthfully reported the events that occurred during and after the city-council meeting at which an investigation into the audit was discussed. The main opinion, relying on WKRG-TV v. Wiley, 495 So.2d 617 (Ala.1986), among others decided before 1986, rejects that reason as a valid defense in this case.
In Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the United States Supreme Court noted that, “[w]hen the speech is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media defendant than is raised by the common law.” The Hepps Court then wrote as follows:
“To ensure that true speech on matters of public concern is not deterred, we hold that the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern.
“In the context of governmental restriction of speech, it has long been established that the government cannot limit speech protected by the First *529 Amendment without bearing the burden of showing that its restriction is justified. See Consolidated Edison Co. v. Public Service Comm’n of N.Y., 447 U.S. 530, 540 (1980) (content-based restriction); First National Bank of Boston v. Bellotti, 435 U.S. 765, 786 (1978) (speaker-based restriction); Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-54 (1986) (secondary-effects restriction). See also Speiser v. Randall, 357 U.S. 513 (1958) (striking down the precondition that a taxpayer sign a loyalty oath before receiving certain tax benefits). It is not immediately apparent from the text of the First Amendment, which by its terms applies only to governmental action, that a similar result should obtain here: a suit by a private party is obviously quite different from the government’s direct enforcement of its own laws. Nonetheless, the need to encourage debate on public issues that concerned the Court in the governmental-restriction cases is of concern in a similar manner in this case involving a private suit for damages: placement by state law of the burden of proving truth upon media defendants who publish speech of public concern deters such speech because of the fear that liability will unjustifiably result. See New York Times, 376 U.S., at 279; Garrison [v. Louisiana ], 379 U.S. [64,] 74 [ (1964) ], (‘Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned’). Because such a ‘chilling’ effect would be antithetical to the First Amendment’s protection of true speech on matters of public concern, we believe that a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant. To do otherwise could ‘only result in a deterrence of speech which the Constitution makes free.’ Speiser, supra, 357 U.S., at 526.
“We recognize that requiring the plaintiff to show falsity will insulate from liability some speech that is false, but unprovably so. Nonetheless, the Court’s previous decisions on the restrictions that the First Amendment places upon the common law of defamation firmly support our conclusion here with respect to the allocation of the burden of proof. In attempting to resolve related issues in the defamation context, the Court has affirmed that ‘[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters.’ Gertz [v. Robert Welch, Inc.], 418 U.S. [323,] 341 [ (1974) ]. Here the speech concerns the legitimacy of the political process, and therefore clearly ‘matters.’ See Dun & Bradstreet [, Inc. v. Greenmoss Builders, Inc.], 472 U.S. [749,] 758-759 [ (1985) ] (speech of public concern is at the core of the First Amendment’s protections). To provide ‘ “breathing space,” ’ New York Times, supra, 376 U.S., at 272 (quoting NAACP v. Button, 371 U.S. [415,] 433 [83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ]), for true speech on matters of public concern, the Court has been willing to insulate even demonstrably false speech from liability, and has imposed additional requirements of fault upon the plaintiff in a suit for defamation. See, e.g., Garrison, 379 U.S., at 75; Gertz, supra, 418 U.S., at 347.”
Hepps, 475 U.S. at 776-78 (first emphasis added).
Before Hepps was decided, the United States Supreme Court had written:
*530 “[E]ven where the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching adverse consequences to any except the knowing or reckless falsehood. Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth.”
Garrison v. Louisiana, 379 U.S. 64, 73, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)
This is not a case of a so-called “chase after rumors.” CPC did not merely publish an article that there were rumors circulating throughout the area that a public official had allegedly been involved in indiscretions. Instead, the article at issue was about one city councilman seeking an investigation into a human-resources audit. The article related city officials’ statements regarding the way the audit had been conducted, and Spain’s questioning of the usefulness and validity of the audit. One of the questions raised by Spain was whether there was any truth to the “buzz” that Little had pushed for the audit because he had had a “personal relationship” with the woman who performed the audit. The article went on to quote Spain as saying, “If this is not the case, it’s very unfair to Councilman Little,” and “If there is substance to it, it needs to be disclosed.” In other words, an article about the Anni-ston city council’s discussion regarding an investigation of a human-resources audit included a statement from Spain that one of the reasons why he believed the investigation was necessary was because Little may have had a personal reason for hiring the auditor. The language at issue is about the legitimacy of the public process; that is, it is about a matter of public concern. Furthermore, unlike Hepps, this case involves a statement regarding a public official. As such, the language at issue is “ ‘speech that matters’ ” and, therefore, is deserving of the protections afforded by Hepps.
I believe, therefore, that, as a matter of law, under Hepps, Little failed to meet his burden of showing the falsity of the statements he claims were defamatory, in both the article and in the editorial at issue. Therefore, the summary judgment on his claim of libel against CPC was proper.

. I do not reach the issue of whether the statements at issue are, in fact, defamatory.