Plaintiff Robert R. Webster appeals from a summary judgment in favor of defendant, Charles L. Byrd, in a defamation action. We reverse and remand.
The motion for summary judgment did not specify whether it was based upon there being no genuine issue of material fact as to any element of the affirmative defense of absolute privilege (as argued in Byrd's brief) or upon there being no genuine issue of material fact as to any element of the cause of action for defamation. If there is a genuine issue of material fact as to any element of the affirmative defense of absolute privilege and if there is any evidence tending to establish all elements of defamation, summary judgment is inappropriate. Our standard of review, in determining whether there is some evidence to support each element of defamation and whether there is no genuine issue of a material fact as to each element of the affirmative defense of absolute privilege, is for this Court to review the record in the light most favorable to plaintiff Webster, the nonmoving party, and to resolve all reasonable doubts against Byrd, the defendant and movant.
Autrey v. Blue Cross and Blue Shield of Alabama,481 So.2d 345 (Ala. 1985); Burt v. Commercial Union Insurance Company,489 So.2d 547 (Ala. 1986).
Byrd was president of George C. Wallace State Community College in Selma. Webster was employed as a full-time technical instructor at the college. The allegation of defamation is based on a letter written by Byrd to serve notice upon Webster of the proposed termination of him from his tenured position at the college.
The Alabama legislature has provided that the state board of education has the authority to make rules and regulations to govern the hiring and firing of tenured instructors in our trade schools and junior colleges. Code 1975, § 16-60-111. Pursuant to this grant of authority, the board of education has promulgated regulations specifying the procedures to be followed when it is proposed that a tenured instructor at one of these institutions be fired. These regulations, in pertinent part, provide as follows:
"REASONS FOR TERMINATION
 "Termination of employment for a teacher with tenure may be made for incompetency, insubordination, neglect of duty, *Page 33 
immorality, justifiable decrease in the number of teaching positions, or other good and just cause, `but cancellation may not be made for political, religious or personal reasons.'
"TERMINATION PROCEDURE
 "The employment of a full-time employee of the state technical institute or college with tenure can be terminated only in the following manner:
"Notice of Termination
 "The president or director of the state technical college or state technical institute shall give notice of termination in writing to the teacher stating in detail the reason or reasons for the proposed termination and naming the exact time and place at which the teacher may appear with or without legal counsel before a review board to answer said notice. Said date to be not less than 20 nor more than 30 days after notice is given. Said notice shall also notify the employee that in order to contest the termination, the employee must give the president or director notice in writing of intent to contest ten (10) days before the meeting."
These regulations require the same notice procedure as that mandated by Code 1975, § 16-24-9, for the termination of tenured elementary and high school teachers, except for the requirement of a specified date by which the teacher or instructor must request a hearing (ten days before the hearing rather than five), and except for the fact that the person or entity required to give notice of the proposed termination is different (the president or director of the state technical college or institute rather than the employing board of education). Thus, our decision in this case will apply to notice procedures under that statute, as well.
On October 19, 1978, Byrd wrote a letter to Webster in accordance with these tenure policies to inform him that he was to be terminated as a technical instructor at the college. The letter set forth the grounds for the proposed termination: insubordination, neglect of duty, immorality (including bribery), and "other good and just cause." The letter informed Webster of his right to a hearing.
When Webster demanded a hearing, a review board was appointed by the state superintendent of education. At the conclusion of the hearing, the review board upheld Webster's dismissal, but only on the grounds of insubordination, and it recommended that his name be added to a list of qualified instructors for technical colleges. Webster appealed, but the decision of the review board was upheld.
On October 18, 1979, Webster filed this suit for defamation against Byrd. In his complaint, Webster alleged that the letter of termination written by Byrd was the product of actual malice and contained false and defamatory statements concerning Webster. The trial court entered summary judgment in favor of Byrd, as set out in the following order:
"JUDGMENT AND ORDER OF COURT
 "The Court . . . finds that . . . the Defendant, Charles L. Byrd, was acting in his official capacity as President of George C. Wallace State Community College. The Court also finds that when the Plaintiff's letter of termination was delivered to the Dean of the Technical Division, Business Manager of the College and the Attorney representing the college, the same was a privileged communication and was made to said individuals who had an official interest in the termination of the Plaintiff. The Court further finds that there was no evidence presented to the Court as to any malice on the part of the Defendant, Charles L. Byrd, at the time said letter of termination was written or delivered to the Plaintiff."
In the amended pleading Webster alleged, and in the affidavit in opposition to the motion for summary judgment Webster swore, that the letter, or portions thereof, were published to certain named and unnamed individuals in addition to the dean, attorney, and business manager. *Page 34 
Whether there was a publication or publications sufficient to support a suit for defamation is not addressed by the parties. See, Dixon v. Economy Company, 477 So.2d 353 (Ala. 1985), andMcDaniel v. Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343
(1947). Byrd contends that the letter of termination to Webster was absolutely privileged.
Whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge. Fulton v. Advertiser Co., 388 So.2d 533, 537
(Ala. 1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 954,67 L.Ed.2d 119 (1981). In this case, the trial court found that the letter of termination was privileged, but did not specify whether this privilege was absolute or conditional.
The only absolutely privileged communications that have been heretofore recognized under Alabama law are those made during legislative or judicial proceedings, or those contained in legislative acts made under authority of law. Mead Corporationv. Hicks, 448 So.2d 308 (Ala. 1983). Byrd argues that the letter of termination was an absolutely privileged communication because it commenced a quasi-judicial proceeding. We agree.
This Court has held that tenure hearings are quasi-judicial in nature, State Tenure Commission v. Madison County Board ofEducation, 282 Ala. 658, 213 So.2d 823 (1968); Board ofEducation of Choctaw County v. Kennedy, 256 Ala. 478,55 So.2d 511 (1951); State ex rel. Steele v. Board of Education ofFairfield, 252 Ala. 254, 40 So.2d 689 (1949), but this Court has never decided, until today, whether communications made in the course of quasi-judicial proceedings are absolutely privileged. We came near to expressing an opinion in this matter with our decision in Dunning v. Boyes, 351 So.2d 883
(Ala. 1977), cert. den., 436 U.S. 917, 98 S.Ct. 2261,56 L.Ed.2d 757 (1978), where we held that defamatory communications made in the course of grievance proceedings under collective bargaining contracts are only conditionally privileged, but that case was expressly overruled in Surrencyv. Harbison, 489 So.2d 1097 (Ala. 1986), where this Court held that an alleged statement made in the course of a grievance hearing is absolutely privileged. The courts are divided as to whether an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Some courts recognize only a conditional privilege. Gardner v. Hollifield,97 Idaho 607, 549 P.2d 266 (1976); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967). The majority view, and the view we now adopt, is that an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Brubaker v. Board of Education, School District149, Cook County, Illinois, 502 F.2d 973 (7th Cir. 1974), order clarified, 527 F.2d 611 (7th Cir. 1975), cert. den.,421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); Mock v. Chicago,R.I. P.R. Co., 454 F.2d 131 (8th Cir. 1972); Roberts v.Lenfestey, 264 So.2d 449 (Fla.Dist.Ct.App. 1972).
Where an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, e.g., notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision-maker, see Board ofEducation of Choctaw County v. Kennedy, supra, that proceeding is quasi-judicial in nature and statements made in the course of the proceeding should be absolutely privileged.
Our inquiry must now turn to whether the letter of termination written by Byrd was a communication made "in the course of" a quasi-judicial proceeding. We hold that it was. A quasi-judicial proceeding is initiated when the statutory notice is dispatched, or, as here, when the notice prescribed by the rules and regulations of the state board of education, as authorized by statute, is given. So, at the time the letter of termination written by Byrd was published to the third parties, a quasi-judicial proceeding had commenced. The issuance *Page 35 
of a letter of termination by a junior college or technical college president (or by the board of education under Code 1975, § 16-24-9) is the first step in the quasi-judicial proceeding.
The state board of education, in its regulations governing the procedures to be followed when terminating a tenured junior college or technical college instructor, recognized and attempted to alleviate the great danger to an instructor's reputation that is inherent in its notice procedures by providing that "[i]n no event will the [termination] be communicated to the news media, or any other person except those who must know this fact in order to see that the employee is no longer paid."
As one court has stated, "the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." Supry v. Bolduc, 112 N.H. 274, 276,293 A.2d 767, 769 (1972). In O'Barr v. Feist, 292 Ala. 440, 445,296 So.2d 152, 156 (1974), this Court stated that the absolute privilege is "for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages." These policy considerations apply equally to judicial and to quasi-judicial proceedings.
Such absolutely privileged communications, however, must not be published outside the circle of those who must have knowledge of them pursuant to the decision-making process. The recipient of a communication made outside the judicial or quasi-judicial proceeding must have a direct or close relationship to that proceeding or the absolute privilege is lost. Green Acres Trust v. London, 141 Ariz. 609, 688 P.2d 617
(Sup.Ct. 1984); Troutman v. Erlandson, 286 Or. 3, 593 P.2d 793
(1979); Asay v. Hallmark Cards, Inc., 594 F.2d 692 (8th Cir. 1979); Converters Equipment Corp. v. Condes Corp.,80 Wis.2d 257, 258 N.W.2d 712 (1977). In the Asay case, supra, the Eighth Circuit Court of Appeals stated the rationale underlying this rule:
 "The salutary policy of allowing freedom of communication in judicial [or quasi-judicial] proceedings does not warrant or countenance the dissemination or distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another. . . ."
The state board of education in regulations to be followed when terminating a tenured junior college or technical college instructor prohibited communication of this to all except "those who must know this fact in order to see that the employee is no longer paid."
In the case before us, Webster swore to the following by affidavit:
 "Charles L. Byrd also published portions of the contents of said letter to persons other than Stanhope Frazier [dean of the college] and Phillip Henry Pitts [attorney for the college]. Portions of the content [sic] of said letter were published by relaying them to Frank Shadix, Kenneth Carroll, Roy Howell, Dean Mike Hogan, Mrs. Marion Summerlin, Dean Norman Smoot, and other persons whose names are not now known to me."
If those publications did take place, and those people were not people who had to know in order to make certain that Webster was no longer paid, then Byrd's absolute privilege was forfeited.
Thus, although we have decided that as a matter of law the letter of termination was a communication made in the course of a quasi-judicial proceeding, and was therefore cloaked by an absolute privilege, a question of fact remains as to whether the privilege was lost by its being published outside the confines of the quasi-judicial proceeding. Webster's affidavit contains at least a scintilla of evidence that the letter was published and was more widely disseminated than it should have been. That being so, we must reverse the summary *Page 36 
judgment and remand to allow Webster the opportunity to prove that the letter was published outside the quasi-judicial proceeding to persons not involved in or connected with the proceeding, as defined in the state board of education regulations hereinbefore set out.
If Webster proves the absolute privilege was lost by virtue of improper publication, his battle will have only begun. Even if Byrd had no absolute privilege, he would nonetheless enjoy a conditional privilege to publish the communication to anyone, even to people outside the quasi-judicial proceeding, so long as this was done without malice. The test in this jurisdiction for determining whether a conditional privilege exists is as follows:
 "`"Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken."'"
Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117, 1120
(Ala. 1976), quoting from Berry v. City of New York InsuranceCo., 210 Ala. 369, 371, 98 So. 290, 292 (1923). As president of George C. Wallace State Community College, Byrd owed a duty to the public and to his students to eliminate instructors who were incompetent or insubordinate. Since Byrd owed such a duty, any communications made by him in furtherance of that duty and "within the penumbra of his official duties" were cloaked with a conditional privilege. Fulton v. Advertiser Co.,388 So.2d 533 (Ala. 1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 954,67 L.Ed.2d 119 (1981). Where a defendant holds a conditional privilege, the plaintiff must allege and prove actual or express malice in order to recover. Id. Since Webster is clearly not a public figure, he must show actual malice on the part of Byrd by evidence of "previous ill-will, hostility, threats, rivalry, other actions, former libels or slander, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like." Kenney v.Gurley, 208 Ala. 623, 626, 95 So. 34 (1923). Webster's affidavit contains the following allegation, which is some evidence of malice: "The said Charles L. Byrd, before my termination, ordered me to take actions favorable to the defendant personally when the said Charles L. Byrd told me that I would take such actions `or else,' and I construed this language as a threat to terminate my employment."
We also find that there is some evidence of each element of defamation. Therefore, summary judgment was inappropriate whether it was based upon the defense of absolute privilege or upon there being no proof of some element of the cause of action for defamation.
The upshot of all this is that if the jury finds that the absolute privilege was lost, it must then make another determination as to whether Byrd published the letter with malice. Webster should be given an opportunity to present his case before a jury for determination of these questions.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
STEAGALL, J., concurs in part and dissents in part.