The plaintiff William Sullivan ("the plaintiff"), acting pro se, appeals a summary judgment in favor of the defendants William Smith and Karen Smith ("the Smiths"). We affirm.
In April 1990, the plaintiff was convicted of murdering the Smiths' son and was sentenced to life in prison. The plaintiff became eligible for parole in 2003, and, in order to determine whether he should be granted parole, the Alabama Board of Pardons and Paroles ("the Board") received testimony from witnesses at a hearing on October 27, 2003. The Board heard witnesses on behalf of both the plaintiff and the victim's family in accordance with § 15-22-24, Ala. Code 1975. All the testifying witnesses were sworn in by the Board's bailiff. After swearing to tell the truth, the witnesses gave their testimony in narrative form. The Board did not question them. The Smiths gave testimony opposing the grant of parole. After hearing the testimony of all the witnesses, the Board determined that the plaintiff should be denied parole.
After he was denied parole, the plaintiff sued the Smiths in the Elmore Circuit Court. He alleged that the Smiths were liable for slander, perjury, and obstruction of governmental operations because they allegedly gave false testimony at the parole hearing.[1]
The Smiths moved the trial court to dismiss the plaintiff's claims on the ground *Page 974 
that they were entitled to absolute immunity because they gave their testimony during a quasi-judicial proceeding. The plaintiff responded by filing written objections to the Smiths' motion to dismiss. The trial court then gave the parties notice that it would treat the Smiths' motion to dismiss as a motion for a summary judgment and that it would allow the parties to submit evidentiary materials and briefs in support of, and in opposition to, the motion. The plaintiff filed a pleading titled "Addendum to `Plaintiff's Objection.'" The Smiths filed their affidavits, a transcript of the hearing before the Board, and a brief. Thereafter, the trial court entered a summary judgment in favor of the Smiths. The trial court concluded that the Board, in considering whether "to release" prisoners from prison, "in effect, acts in a quasi-judicial capacity." The trial court further stated:
 "Since an absolute privilege exists in favor of those involved in judicial proceedings, including judges, lawyers, jurors, and witnesses, shielding them from an action for defamation, this Court finds that witnesses who similarly testify before the Parole Board should be afforded the same privilege. Accordingly, this Court finds that anything that the [Smiths] might have said before the Parole Board is privileged and renders them immune from suit.
 "It is therefore ORDERED that since the statements of the [Smiths] are privileged that this case is DISMISSED."
The plaintiff timely appealed to the supreme court. Pursuant to § 12-2-7(6), Ala. Code 1975, the supreme court transferred the appeal to this court.
On appeal, the plaintiff argues that the trial court erred in concluding that the Board's hearing was a quasi-judicial proceeding that afforded the Smiths absolute immunity. It is axiomatic that appellate review of a summary judgment is de novo.Ex parte Ballew, 771 So.2d 1040 (Ala. 2000).
The issue, "[w]hether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge." Webster v. Byrd, 494 So.2d 31,34 (Ala. 1986).
It is well settled that "an absolute privilege attaches to communications made in the course of quasi-judicial proceedings."Webster, 494 So.2d at 34. Quoting Supry v. Bolduc,112 N.H. 274, 276, 293 A.2d 767, 769 (1972), our supreme court opined inWebster that "`the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.'"Webster, 494 So.2d at 35. Furthermore, "the absolute privilege is `for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.'"Webster, 494 So.2d at 35 (quoting O'Barr v. Feist,292 Ala. 440, 445, 296 So.2d 152, 156 (1974)). "These policy considerations apply equally to judicial and to quasi-judicial proceedings." Webster, 494 So.2d at 35.
Thus, in order to determine whether the Smiths' testimony was entitled to an absolute privilege, we must first determine whether the proceeding at which the *Page 975 
Smiths testified was a quasi-judicial one. In turn, in order to determine whether the proceeding at which the Smiths testified was a quasi-judicial one, we must determine whether the Board was functioning in a quasi-judicial capacity.
The Board makes discretionary determinations regarding whether a prisoner should be pardoned or paroled. Indeed, the Board's parole decisions are completely discretionary. Thompson v. Boardof Pardons Paroles, 806 So.2d 374 (Ala. 2001), and Ex parteAlabama Bd. of Pardons Paroles, 849 So.2d 255 (Ala.Crim.App. 2002). In Ex parte Alabama Bd. of Pardons Paroles, the Court of Criminal Appeals analogized the role of the Board and the discretionary decisions it must make in parole determinations to that of a trial court and the discretionary decision it must make in granting or denying probation, because such a determination by the trial court is not reviewable on appeal due to the complete discretion of the trial court. 849 So.2d at 261; see also Ellardv. State, 474 So.2d 743 (Ala.Crim.App. 1984) (implicitly recognizing the quasi-judicial nature of the Board of Pardons and Paroles when it engages in a deliberative function). Moreover, inO'Barr v. Feist, 292 Ala. at 444-45, 296 So.2d at 155-56, quoting Perkins v. United States Fidelity Guaranty Co.,433 F.2d 1303, 1304-05 (5th Cir. 1970), quoting in turn Rainey v.Ridgeway, 151 Ala. 532, 43 So. 843 (1907), the Alabama Supreme Court held:
 "`"Judicial power is authority, vested in some court, officer, or person, to hear and determine, when the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication. Official action, the result of judgment or discretion, is a judicial act. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act."'"
(Emphasis added.)
The acts of the Board in granting or denying parole are the result of "judgment or discretion" and consequently are judicial in nature. They are not ministerial as described in O'Barr andRainey.
Moreover, in Pate v. Alabama Bd. of Pardons Paroles,409 F.Supp. 478, 479 (M.D.Ala. 1976), aff'd, 548 F.2d 354 (5th Cir. 1977), in an action against members of the Board alleging that they negligently or willfully and wantonly performed their official duties, the federal district court found that the Board, "when performing [its] official duties, [is] engaged in `quasi-judicial' activities." The court went on to state that "[t]he function of the Parole Board is more nearly akin to that of a judge in imposing sentence and granting or denying probation than it is to that of an executive administrator." Id. InSellers v. Thompson, 452 So.2d 460 (Ala. 1984), the Alabama Supreme Court adopted the reasoning of Pate. See also Cruz v.Skelton, 502 F.2d 1101 (5th Cir. 1974) (recognizing that state officials who process applications for parole perform quasi-judicial functions); and Cole v. Star Tribune,581 N.W.2d 364, 369 (Minn.Ct.App. 1998) (holding that the Minnesota Board of Pardons is a quasi-judicial entity and that written statements submitted to it regarding a prisoner's request for early release from prison are entitled to absolute privilege).
Furthermore, § 15-22-36(b), Ala. Code 1975, provides:
 "Each member of the Board of Pardons and Paroles favoring a pardon, parole, remission of a fine or forfeiture, or restoration of civil and political rights shall enter in the file his or her reasons in detail, which entry and the order shall *Page 976 
be public records, but all other portions of the file shall be privileged."
(Emphasis added.) In interpreting this provision, the Alabama Supreme Court has held:
 "Principles of statutory construction bind this Court to interpret plain language of a statute `to mean exactly what it says' and to engage in judicial construction only if the language in the statute is ambiguous. Ex parte Alabama Great Southern R.R., 788 So.2d 886, 889 (Ala. 2000), quoting Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998). The Legislature stated in § 15-22-36(b), Ala. Code 1975, with specificity and particularity, that `all other portions of the file shall be privileged.' A plain reading of the statute indicates that the Legislature created an absolute privilege to provide individuals and entities an unfettered opportunity to provide information to the Board, without exposing the individuals and entities to public scrutiny and potential retaliation. To hold otherwise, this Court would have to engage in improper judicial construction."
Ex parte Alabama Bd. of Pardons Paroles, 814 So.2d 870, 872
(Ala. 2001) (emphasis on "public scrutiny" original; other emphasis added).
On the basis of these legal authorities, we hold that the Smiths were testifying in a quasi-judicial proceeding when they testified before the Board and, therefore, are entitled to absolute immunity.
Because the Smiths were entitled to absolute immunity, we affirm the summary judgment in their favor.
AFFIRMED.
All the judges concur.
[1] Specifically, the plaintiff argues that the following testimony at the parole hearing slandered him: Mrs. Smith's testimony that "[o]utside the prison, outside [Sullivan] never abided by the laws; otherwise, my son would still be alive"; and Mr. Smith's testimony that "William Larry Sullivan stabbed my son 17 times, and he does not need to be out, because he has vowed to kill his wife when he does get out, and this is in the court transcript."