IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2024 Session

## FRED AUSTON WORTMAN, III v. ERIC SHIRKEY

**Appeal from the Circuit Court for Morgan County**
**No. 2020-CV-27     Michael S. Pemberton, Judge**

_____

### No. E2023-00763-COA-R3-CV

_____

This appeal concerns whether witness testimony in the course of a parole hearing is absolutely privileged. Fred Auston Wortman, III ("Plaintiff"), a prisoner, filed a defamation lawsuit against Eric Shirkey ("Defendant"), a detective who testified at Plaintiff's parole hearing, in the Circuit Court for Morgan County ("the Trial Court").[1] Plaintiff alleged that Defendant's statements about him at the parole hearing, such as calling Plaintiff a "narcissist," damaged his reputation. Defendant filed a motion to dismiss, which the Trial Court granted. The Trial Court concluded that Defendant's statements were absolutely privileged. Plaintiff appeals, arguing that his parole hearing was administrative rather than judicial in nature, so Defendant's statements were not protected by absolute privilege. We hold that the parole board, in considering whether to grant Plaintiff parole, was exercising a judicial function such that absolute privilege extended to testimony at the parole hearing. We hold further that Defendant's statements were relevant and pertinent to the issues involved. Therefore, Defendant's statements at Plaintiff's parole hearing were absolutely privileged. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Tim Arrants and James Marple, Jefferson City, Tennessee, for the Appellant, Fred Auston Wortman, III.[2]

Reid A. Spaulding, Knoxville, Tennessee, for the appellee, Eric Shirkey.

_____

[1] Plaintiff originally filed suit in Morgan County Chancery Court in February 2020, but the case was transferred to the Trial Court.

[2] Plaintiff submitted an appellate brief pro se. Prior to oral argument, attorneys Tim Arrants and James Marple filed a notice of appearance on behalf of Plaintiff.

# OPINION

## Background

Plaintiff was sentenced to thirty years in prison after pleading guilty to two counts of attempted first degree murder and one count of solicitation of first degree murder for attempting to kill his wife. *See Wortman v. State*, No. M2021-00068-COA-R3-CV, 2021 WL 5174701, at \*1 (Tenn. Ct. App. Nov. 8, 2021), *perm. app. denied March 24, 2022*. On September 19, 2019, Plaintiff had a parole hearing. Defendant, a detective who worked on Plaintiff's case, testified unfavorably to Plaintiff being granted parole. Defendant stated:

> Mr. Chairman, my name is Detective Eric Shirkey with the Collierville Police Department. I'm here on behalf of Staci Jones, who has asked me to be here on her behalf. I think it's very important for all (indiscernible) since TBI agents are not here to speak on the actual investigation side of all of this.
>
> Upon being contacted by the Cox Law Firm on February the 13th, 2015, I was the first investigator there to investigate searches that were found on his computer. Mr. Wortman is a highly intelligent, very educated and (indiscernible) individual in all aspects that any individual spoke to (indiscernible).
>
> This entire investigation stemmed from him making, not only poor decisions, but decisions to the fact that it was so premeditated in every aspect of his decision-making, that he tried to hide it on the (indiscernible) computer to avoid any conflicts with his office, not to mention he went even above and beyond that and was looking at every (indiscernible) of poisons. I can't even go through the lists that this man had researched trying to figure out the (indiscernible) way of ending this lady's life in the quickest way possible, it sounded like.
>
> The poison in question, since we haven't brought that up today, was called Aconitum. It's also referred to as Wolfsbane. All right? It's a flower plant that grows in the wild mostly (indiscernible). This poison not only, depending upon the dosage, is an instant death, but in the syringe that he put into this toothpaste, he had no idea how much poison to put into that thing. And the dosage that he chose, thankfully, for her sake, it was not deadly enough to kill her because of the amount that she was using at the time.
>
> On top of the searches, on top of all the conversations that have been brought up today, again, I have to refer to the lack of remorse. It is the dictionary definition of a narcissist. And I'm looking at one every time I see Mr. Wortman. The man can sit there stoically listening to all this testimony and wasting countless hours petitioning the courts of this state, stating that

-2-

he's a righteous individual that (indiscernible). I have no doubt that he's probably remorseful, to some extent, that he got caught. And it's a shame that we're having to sit here and waste your time, Mr. Chairman, on a sentence that he pled to. He should have taken -- he's lucky he didn't get more time in prison. And it would be a travesty and an injustice for this justice system to allow him parole before his 30 percent on that 30 years.

Thank you for your time.

Plaintiff was denied parole. Plaintiff subsequently sued Defendant for defamation, citing Defendant's having referred to him as a "narcissist" as an alleged example of a defamatory remark.[3] In August 2020, Defendant filed a motion to dismiss for failure to state a claim and an accompanying memorandum asserting absolute privilege for statements made in the course of a judicial proceeding. In April 2021, following a hearing, the Trial Court entered an order granting Defendant's motion to dismiss. The Trial Court attached to its written order a transcript of its oral ruling. In its oral ruling, the Trial Court stated, as relevant:

As to the motion to dismiss, this court approves -- not that I would imagine Chancellor Perkins really loses much sleep at night as to whether this court approves of his opinion -- but adopts the reasoning of Chancellor Perkins in the Wortman versus Tennessee Board of Parole case -- privilege docket No. 20-619-4. Specifically, the court finds -- this court finds that this is, at a minimum, a quasi-judicial proceeding, and probably a judicial proceeding under the rationale adopted by Robinson versus Traughber and Wright versus McClain. And so having found that, the next issue is whether or not the defendant here enjoyed absolute immunity. And the court finds that under the Jones versus Trice and Lambdin Funeral Services, Inc. versus Griffith, the statements made in the course of the judicial proceedings and administrative proceedings that are included therein are absolutely privileged and cannot be used as a basis for a libel action for damages. This is an absolute privilege doctrine and the court finds it applicable here. The doctrine is also brought enough -- well, that doesn't involve this so -- while the court appreciates the plaintiff's arguments, the court is not persuaded by them and therefore the court will grant the motion to dismiss on those grounds.

---

[3] A "narcissist" has been defined by one source as "an individual showing symptoms of or affected by narcissism: such as" "an extremely self-centered person who has an exaggerated sense of self-importance," "a person affected with narcissistic personality disorder," or "a person who is overly concerned with his or her physical appearance." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/narcissist. (Last accessed September 11, 2024).

Plaintiff filed a motion to alter or amend, as well as a motion to hold the ruling in abeyance pending resolution of an appeal in a related case in Davidson County Chancery Court. The Trial Court granted the requested abeyance. The related appeal later was dismissed by the Court of Appeals. In December 2021, Plaintiff filed a motion for leave to amend his complaint. In May 2023, following a hearing, the Trial Court entered an order lifting the abeyance and denying Plaintiff's motion to amend his complaint. Plaintiff timely appealed to this Court.

## **Discussion**

Plaintiff raises two issues on appeal. We restate and consolidate Plaintiff's two issues into the following dispositive issue: whether the Trial Court erred in dismissing Plaintiff's complaint on grounds that Defendant's statements as a witness at Plaintiff's parole hearing were absolutely privileged.

Regarding our standard of review for motions to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), the Tennessee Supreme Court has instructed:

> A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (citing *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

> A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-6(g), at 5-111 (3d ed.

2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012).

Plaintiff contends that his parole hearing was administrative rather than judicial in nature, therefore Defendant's statements were not absolutely privileged. With respect to absolute privilege for statements made in the course of judicial proceedings, the Tennessee Supreme Court has stated:

> It is generally recognized that statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel, slander, or invasion of privacy. *Jones v. Trice*, 210 Tenn. 535, 360 S.W.2d 48 (1962); *Froehlich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973); *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063 (1972); *Hagan v. Fairfield*, 238 Cal.App.2d 197, 47 Cal.Rptr. 600 (1965); 62 Am.Jur.2d *Privacy* § 14; 53 C.J.S. *Libel & Slander* § 104. This absolute privilege holds true even in those situations where the statements are made maliciously and corruptly. *Hayslip v. Wellford*, 195 Tenn. 621, 263 S.W.2d 136, 42 A.L.R.2d 820 (1953). It also holds true in administrative proceedings before boards or commissions that are clothed with the authority to revoke a license "after a hearing for good cause shown," as is the Tennessee Board of Funeral Directors and Embalmers. *Independent Life Insurance Company v. Rodgers*, 165 Tenn. 447, 55 S.W.2d 767 (1932). *See also,* Prosser, Law of Torts, 3d Ed. 1964, wherein it is noted at page 799 that:
>
> > The "judicial proceeding" to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial [f]unction, ex parte, or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or "quasi-judicial." in character. *Thus the ordinary administrative proceeding to revoke a license is held to lie within the privilege.* (emphasis supplied).

The underlying basis for the grant of the privilege is the public's interest in and need for a judicial process free from the fear of a suit for damages for defamation or invasion of privacy based on statements made in the course of a judicial or quasi-judicial proceeding. *Jones v. Trice*, 210 Tenn. 535, 360 S.W.2d 48 (1962); *Crockett v. McClanahan*, 109 Tenn. 517, 530, 72 S.W. 950, 953, 61 L.R.A. 914 (1903).

In the instant case, each tort charged in the complaint is predicated upon the publication by the defendant of alleged acts of misconduct by the plaintiff. The publications relied upon were either in the circuit court action or in the proceedings before the Tennessee Board of Funeral Directors and Embalmers. There is no contention that the statements were not pertinent to issues involved. Consequently, the pleadings and statements were privileged communications, and as such cannot be the predicate for liability in the action for the torts set forth in the complaint.

*Lambdin Funeral Serv., Inc. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978).

Plaintiff acknowledges *Lambdin* but argues that the privilege it articulates does not extend to his parole hearing. Plaintiff cites, among other cases, the United States District Court for the Middle District of Tennessee in *Alyn v. S. Land Co., LLC*, No. 3:15-cv-00596, 2016 WL 7451546 (M.D. Tenn. Dec. 28, 2016), in which the District Court declined to extend absolute privilege to statements made before a certain body because it did not have the power to revoke a license:

First, Southern Land argues that the statements contained in the WCAR [Williamson County Association of Realtors] complaint were protected by absolute privilege, citing *Lambdin Funeral Serv., Inc. v. Griffith*, 559 S.W.2d 791 (Tenn. 1978), which held that the absolute privilege that attaches to statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved "also holds true in administrative proceedings before boards or commissions that are clothed with the authority to revoke a license after a hearing for good cause shown." *Id*. at 792. In *Lambdin*, the administrative board at issue was the Tennessee Board of Funeral Directors and Embalmers, which does have the authority to revoke a license. *Id*. Southern Land concedes that the WCAR does not have the authority to revoke a real estate license, but asks the Court to extend its reasoning nonetheless. (Doc. No. 84 at 26-27 & n.5.) The Court declines to extend the holding in *Lambdin*, as the authority to revoke a license was clearly central to the *Lambdin* court's decision to extend absolute immunity that attaches to

-6-

statements made in judicial proceedings to those made in administrative proceedings where the board has the authority to revoke a license. *Lambdin*, 559 S.W.2d at 792.

*Alyn*, 2016 WL 7451546, at \*15.

However, the Tennessee Supreme Court's opinion in *Lambdin* is binding on this Court; *Alyn* is not.[4] In addition, *Alyn* does not support Plaintiff's position. *Alyn* merely distinguished the proceeding at issue in that case from the one at issue in *Lambdin*. *Alyn* did not purport to demarcate the whole universe of settings in which absolute privilege for statements made in the course of judicial proceedings applies.

Under *Lambdin*, absolute privilege is not restricted to boards or commissions which can revoke a license. *Lambdin* favorably quotes Prosser, Law of Torts, 3d Ed. 1964, at page 799, noting that "[t]he 'judicial proceeding' to which the immunity attaches . . . includes any hearing before a tribunal which performs a judicial [f]unction, ex parte, or otherwise, and whether the hearing is public or not." *Lambdin*, 559 S.W.2d at 792. Furthermore, "[i]t extends also to the proceedings of many administrative officers such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or 'quasi-judicial.' in character." *Id*. Therefore, Plaintiff's characterization of his parole hearing as administrative is beside the point. The important point is the proceeding's function, not its label. In fact, as relevant to this appeal, we have specifically stated that "[i]n considering parole for prisoners, the Parole Board is considered to be exercising a judicial function which is not reviewable if done in accordance with the law." *Robinson v. Traughber*, 13 S.W.3d 361, 363 (Tenn. Ct. App. 1999).

While not controlling authority, we find persuasive an opinion by the Court of Civil Appeals of Alabama, *Sullivan v. Smith*, 925 So.2d 972 (Ala. Civ. App. 2005). In *Sullivan*, the parents of a murder victim testified before the Alabama Board of Pardons and Paroles against their son's killer being granted parole. *Id*. at 973. After the prisoner was denied parole, he sued the victim's parents for slander, perjury, and obstructing governmental operations by their alleged false testimony. *Id*. The trial court found that the parole board's acts were quasi-judicial in nature and the victim's parents were protected by absolute immunity. *Id*. at 974. On appeal, the Alabama appellate court discussed as follows, in part:

---

[4] "[F]ederal opinions interpreting Tennessee law are not binding on this Court." *Robinson v. City of Clarksville*, 673 S.W.3d 556, 573 n.7 (Tenn. Ct. App. 2023).

The issue, "[w]hether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge." *Webster v. Byrd*, 494 So.2d 31, 34 (Ala. 1986).

It is well settled that "an absolute privilege attaches to communications made in the course of quasi-judicial proceedings." *Webster*, 494 So.2d at 34. Quoting *Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972), our supreme court opined in *Webster* that " 'the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.' " *Webster*, 494 So.2d at 35. Furthermore, "the absolute privilege is 'for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.' " *Webster*, 494 So.2d at 35 (quoting *O'Barr v. Feist*, 292 Ala. 440, 445, 296 So.2d 152, 156 (1974)). "These policy considerations apply equally to judicial and to quasi-judicial proceedings." *Webster*, 494 So.2d at 35.

***

[I]n *Pate v. Alabama Bd. of Pardons & Paroles*, 409 F.Supp. 478, 479 (M.D. Ala. 1976), *aff'd*, 548 F.2d 354 (5th Cir. 1977), in an action against members of the Board alleging that they negligently or willfully and wantonly performed their official duties, the federal district court found that the Board, "when performing [its] official duties, [is] engaged in 'quasi-judicial' activities." The court went on to state that "[t]he function of the Parole Board is more nearly akin to that of a judge in imposing sentence and granting or denying probation than it is to that of an executive administrator." *Id*. In *Sellers v. Thompson*, 452 So.2d 460 (Ala. 1984), the Alabama Supreme Court adopted the reasoning of *Pate*. *See also Cruz v. Skelton*, 502 F.2d 1101 (5th Cir. 1974) (recognizing that state officials who process applications for parole perform quasi-judicial functions); and *Cole v. Star Tribune*, 581 N.W.2d 364, 369 (Minn. Ct. App. 1998) (holding that the Minnesota Board of Pardons is a quasi-judicial entity and that written statements submitted to it regarding a prisoner's request for early release from prison are entitled to absolute privilege).

*Id*. at 974-75. The Alabama appellate court also stated that the parole board's acts granting or denying parole were judicial, not ministerial, since they resulted from the board's

exercise of judgment or discretion. *Id*. at 975. The *Sullivan* court affirmed the trial court's grant of summary judgment in favor of the victim's parents, concluding that they were entitled to absolute immunity for their testimony before the board. *Id*. at 976.

Under Tennessee law, the manner by which the parole board's decision on whether to grant parole is reviewed further reflects that it is a judicial function. The parole board's decision whether to grant parole is reviewable by writ of certiorari "to determine whether the Board has exceeded its jurisdiction, or has acted illegally, fraudulently or arbitrarily." *Robinson v. Traughber*, 13 S.W.3d at 363; *see also Walker v. Tenn. Bd. of Parole*, No. M2023-00219-COA-R3-CV, 2023 WL 7219241, at *2 (Tenn. Ct. App. Nov. 2, 2023), *no appl. perm. appeal filed* ("The common law writ of certiorari is the proper means by which to seek review of decisions made by prison disciplinary boards, parole eligibility review boards, and similar tribunals."). This manner of review is in keeping with a tribunal exercising a judicial function, as we have discussed:

> Since a writ of certiorari is an order issued by a superior court to compel a board or lower tribunal to send up its record(s) for a review to determine whether there has been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law, *see, e.g., Clark v. Metro. Gov't of Nashville and Davidson County*, 827 S.W.2d 312 (Tenn. Ct. App. 1991), a writ of certiorari presupposes that the inferior board or tribunal has, or should have, created a record which may, upon issuance of the writ of certiorari, be reviewed by a superior court.

> In the absence of a specific statute expressly granting the writ, the writ of certiorari is available only if the following requirements are met: (1) the order of the administrative body of which review is sought is one for which no judicial review is provided; (2) the function performed by the lower tribunal is essentially judicial in nature; (3) the order for which review is sought finally determines the rights of the petitioner. *See Buford v. Tennessee Dep't of Corrections*, No. M1998-00157-CO-AR3-CV, 1999 WL 1015672 (Tenn. Ct. App. Nov. 10, 1999) (citing Ben H. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 Mem.St.U.L.Rev. 19, 27-28 (1973)). Of these criteria, the primary question in the case at bar is whether the action of the Warden was essentially administrative or judicial in nature. The question of what constitutes a "judicial" function in the arena of common-law writs of certiorari is discussed in Ben H. Cantrell's law review article as follows:

> > As Professor Jaffe has shown, the term "judicial," when used in connection with the common-law writ, is not a highly

technical term. "Judicial" simply conveys that the writ "has been directed to officers who made determinations *upon a record*."

> There is nothing to show that the notion of "judicial" was a narrowly technical concept requiring nice distinctions [between "judicial" and "legislative" or "administrative"] as to the exact character of the action to be reviewed. It would appear that the gist was not so much in the character of the action as in the manner of it, namely that it was taken upon a record.

> Jaffe concludes that, although some jurisdictions have distinguished "legislative" and "judicial" for purposes of determining whether the common-law writ is available, the better understanding of "judicial" in this context is one which affords the common-law writ to review any "proceeding inter partes where decision is to be taken on a record made at a hearing required by law."

Ben H. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 Mem.St.U.L.Rev. 19, 20 (1973)) (citations and footnotes omitted) (emphasis in original).

*Breer v. White*, No. W2005-00702-COA-R3-CV, 2005 WL 2043844, at *3 (Tenn. Ct. App. Aug. 23, 2005), *no appl. perm. appeal filed*.

Plaintiff argues further that, even if absolute privilege extended to his parole hearing, it would only protect statements that were relevant and pertinent to the issues involved, a requirement set out in *Lambdin*. According to Plaintiff, Defendant's remarks—in particular calling Plaintiff a narcissist—went beyond the scope of the parole hearing and the protection of absolute privilege. At oral argument, counsel for Plaintiff said that a jury should decide whether Defendant's statements were relevant and pertinent. However, there is nothing for a jury to decide. "As to relevancy and pertinency of statements it is the general rule that this question is one of law for the court. The matter to which the privilege does not extend must be so irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Logan's Super Markets, Inc., v. McCalla*, 343 S.W.2d 892, 894 (Tenn. 1961); *see also Desgranges v. Meyer*, No. E2003-02006-COA-R3-CV, 2004 WL 1056603, at *5 (Tenn. Ct. App. May 11, 2004), *no appl. perm. appeal filed* ("Pertinency and relevance are questions of law.").

We have carefully reviewed the statements made by Defendant at Plaintiff's September 19, 2019 parole hearing. Defendant's statements were not so irrelevant to the subject matter of the controversy that no reasonable person could doubt their irrelevancy and impropriety. On the contrary, Defendant's statements concerned the very point of the hearing—whether Plaintiff should be granted parole. Whether a prisoner under consideration for parole is a narcissist may well be a relevant consideration for the parole board in deciding whether that prisoner should be granted parole. We conclude, as a matter of law, that Defendant's statements were relevant and pertinent to the issues involved. We take no position on the truth or untruth of Defendant's statements; that is not the determinative factor for whether the privilege applies.

In sum, Defendant made statements in the course of Plaintiff's parole hearing before the parole board, then exercising a judicial function, that were relevant and pertinent to the issues involved. Thus, Defendant's statements at Plaintiff's September 19, 2019 parole hearing were absolutely privileged because "[i]t is generally recognized that statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel, slander, or invasion of privacy." *Lambdin*, 559 S.W.2d at 792. Accepting all of Plaintiff's factual allegations as true and viewing them in the most favorable light, Plaintiff has failed to state a claim for which relief can be granted. We affirm.

## Conclusion

We affirm the judgment of the Trial Court, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Fred Auston Wortman, III, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE