Filed 8/18/15  Rockey v. Capabianca CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN LAWRENCE ROCKEY,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>MARIA CAPABIANCA,<br><br>        Defendant, Cross-complainant and Respondent. | D066453<br><br><br>(Super. Ct. No. 37-2012-00091126-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Edelberg & Espina, Claire N. Espina and Arnel O. Tan for Plaintiff, Cross-defendant and Appellant.

The Law Offices of Richard L. Knight and Richard L. Knight for Defendant, Cross-complainant and Respondent.

After a bench trial, the court found for defendant Maria Capabianca on all claims brought by plaintiff Steven Lawrence Rockey except his claim for conversion of personal property, for which it awarded him $2,500. The court found for Rockey on all cross-claims brought by Capabianca except her claim for intentional infliction of emotional distress (IIED), for which it awarded her $34,983.07, after the offset of Rockey's nominal damage award.

Rockey appeals the judgment in favor of Capabianca on three grounds. First, he contends the court erred in denying his motion in limine to exclude evidence of his prior felony conviction. Although Rockey admitted to being a convicted felon, he contends this evidence was irrelevant, or should have been excluded under Evidence Code section 352[1] because the conviction's prejudicial effect substantially outweighed its probative value.

Second, Rockey contends the evidence supported a larger damage award on his claim for conversion of personal property. Although the court found only an obstruction by Capabianca and no permanent taking, Rockey nonetheless contends he is entitled to the value of the property, plus interest, not just compensation for loss of use of the property.

Third, Rockey contends the court erred in finding Capabianca prevailed on her IIED claim because the record does not support a finding of causation.

We affirm the judgment.

---

[1] All further statutory references are to the Evidence Code unless noted otherwise.

FACTUAL AND PROCEDURAL BACKGROUND

Rockey and Capabianca met in 2006. Soon after, Capabianca invited Rockey to move in with her. In 2008 or 2009, Capabianca began an extensive remodel of her house. Since she had to leave for work during the day, Capabianca allowed Rockey to serve as her "eyes and ears" during the construction project. Rockey also made several monetary advancements toward the construction, for which Capabianca reimbursed him.

During the summer of 2011, Rockey and Capabianca's relationship started to deteriorate. Capabianca stopped paying Rockey for his construction advancements, making him angry and volatile. Rockey verbally and physically lashed out at Capabianca, causing her to fear him. In addition, Rockey behaved erratically, staying up for two or three days at a time, talking incomprehensibly, and falling on the floor.

By August, Capabianca planned to force Rockey to move out of her house. However, when he told her he had been diagnosed with brain cancer, she changed her mind.[2] Because Capabianca previously experienced the death of two friends from brain cancer, she "knew what was going to happen" and felt it was her responsibility to help Rockey through this tough time.

Rockey's admission of his illness greatly affected Capabianca. She told her friend, Debbie Jackson, that she was devastated by the news. The day after learning about the cancer, Capabianca wanted to stay home and help Rockey, but he insisted that she go to work. While on the job, Capabianca's back went out and she had trouble standing. After

---

[2] Rockey later testified at trial that he never had a brain tumor.

3

work, Capabianca went to see her chiropractor, James Padilla, D.C., who had treated her over the past six years.

Dr. Padilla assessed her condition and put her on medical leave for 18 weeks. He testified that her injury could have been triggered by the emotional trauma caused by Rockey's admission of his illness, especially because she had suffered no previous injury that would have worsened her back pain and she had never experienced as severe a back problem.

In October 2011, Rockey took a trip to Texas to help a friend build a boat pier. While he was gone, one of the construction workers at Capabianca's house found an extra key to one of Rockey's locked toolboxes and opened it. Inside, he discovered 43.81 grams of hashish, 30.24 grams of marijuana, and 5.5 grams of methamphetamine. The toolbox also contained papers relating to Rockey's previous felony drug conviction.

When confronted, Rockey admitted the drugs were his, leading Capabianca to believe that his erratic behavior really stemmed from drug use, not brain cancer. After this realization, Capabianca became very distraught and depressed and sought a restraining order against Rockey.

When Rockey returned from Texas, he asked Capabianca for permission to collect his belongings from her house. Capabianca obliged, but told him about the restraining order and said a sheriff would need to be present while he was there. Rockey hired ACE Relocation Services (ACE) to pick up his things from Capabianca's home. ACE collected over two *tons* of Rockey's belongings, but did not collect all of his personal

4

property. Rockey claimed that some of his items were missing, but Capabianca told him that she gave ACE everything she had of his.

Roughly two years later, in October 2013, Capabianca found more of Rockey's belongings at her home and Rockey had a friend pick up the rest of his property. Afterward, Rockey continued to claim Capabianca had some of his personal property, including most of his tools and his rings. Rockey filed a complaint against Capabianca alleging conversion, fraud and breach of contract. Capabianca filed a cross-complaint alleging breach of contract, negligence, fraud, and IIED. A three-day bench trial was set for May 2014. Before trial, Rockey filed a motion in limine to exclude his previous felony conviction. The court chose not to rule on this motion. At trial, Capabianca testified that the only items of Rockey's that she retained were a couple of trees and an inversion table—which she agreed to return to Rockey at any time.

After hearing the evidence and arguments by counsel, the court found for Capabianca, with an offset of her award for Rockey's nominal damages on his conversion claim.

DISCUSSION

I

*Motion in Limine*

A.    Rockey's Failure to Object to a Deferred Ruling

Rockey contends that the court denied his motion in limine to exclude evidence of his prior felony conviction. However, the record does not support this contention. Rather, the court deferred ruling on the motion and instructed the parties to object to any

5

issues as the trial progressed.  Therefore, it was Rockey's responsibility to press for a ruling or object to the admission of the evidence at trial until a ruling was obtained.  (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 283.)  Because Rockey failed to do either, and thus deprived the court of the opportunity to correct the alleged error, he has forfeited any claim of error in the introduction of evidence of his prior conviction.  (See *ibid.*; see also *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1227 [noting that to preserve the right to challenge the admission of evidence on appeal, a party must timely object in the trial court].)

B.      Abuse of Discretion Standard and Harmless Error

Even if Rockey had not forfeited this issue, we in any event conclude the court did not abuse its discretion when it deferred its ruling on the motion in limine. "When a matter is left to the discretion of the trial court, on appeal we apply the abuse of discretion standard of review." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 (*Cahill*).)  No abuse of discretion exists if there is a reasonable or "fairly debatable" legal justification for the trial court's decision. (*Ibid.*)  A judgment under this standard of review is only reversed if in light of the facts, viewed in favor of the decision, the decision is one that is outside the bounds of reason and therefore no judge could have "reasonably have reached that decision under applicable law." (*Ibid.*)

Here, the court reasonably determined that deferring a ruling on the motion would avoid the possibility of excluding evidence before knowing its relevance and context. (See *City and County of San Francisco v. Coyne* (2008) 168 Cal.App.4th 1515, 1520.)  In addition, Rockey's main concern was the potential prejudicial effect of the evidence,

6

which is of significantly less concern in a bench trial than in a jury trial. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593 [recognizing that a motion in limine is designed to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party, to avoid the need to " ' "unring the bell" ' " in the event a motion to strike is granted in proceedings before a *jury*].) Because the judge, not a jury, was the trier of fact here, the risks of confusion or prejudice from the admission of the evidence was at most de minimis. (See *Harris v. Rivera* (1981) 454 U.S. 339, 346.) For this separate reason, we conclude the court did not abuse its discretion by choosing to defer ruling on the motion, and instructing the parties to object when necessary during the proceedings.

Finally, even if the court did err in not ruling on the motion, that error was harmless. Perhaps the strongest support for harmless error is the fact the court did not rely on Rockey's prior conviction in its statement of decision. Instead, the court cited to credible witness testimony to support its findings and damage award.

Rockey's argument that the court's perception was likely colored by the admission of his felony record amounts to nothing more than speculation. Any error stemming from the court's decision not to rule on the motion was harmless.

C.    <u>Invited Error</u>

In addition, Rockey is estopped from alleging he was prejudiced as a result of the court's decision to defer ruling on his motion in limine. Under the doctrine of invited error, "where a party by his conduct induces the commission of error, he is estopped from

7

asserting it as a ground for reversal on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)

Here, after filing a motion in limine to exclude evidence of Rockey's prior conviction, the record shows *his* counsel proceeded to proffer that evidence for proper consideration by the trier of fact. Having done so, Rockey cannot now be heard to contend that this evidence prejudiced the court and negatively influenced its decision.

II

*Inadequate Damages for Conversion Claim*

A.      Rockey's Failure to Move for New Trial

"A failure to timely move for a new trial ordinarily precludes a party from complaining on appeal that the damages awarded were either excessive or inadequate, whether the case was tried by a jury or by the court." (*Jamison v. Jamison* (2008) 164 Cal.App.4th 714, 719, 720; see *County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1121-1122 [holding the county could not argue, for the first time on appeal, that the court did not correctly determine the value of the tax on its damage award because it had not moved for a new trial].) Because it is the trier of fact's duty to weigh the evidence and resolve issues of credibility, a party who challenges a damage award on appeal without a motion for a new trial "unnecessarily burdens the appellate court with issues that can and should be resolved at the trial level." (*Jamison,* at pp. 719, 720.)

Here, Rockey did not move for a new trial to contest his damage award for conversion of personal property. Therefore, he has forfeited appellate review on this issue.

### B. Calculation of Damages

Even if Rockey had properly moved for a new trial, substantial evidence in the record supports the court's finding that he suffered only nominal damages from the loss of use of his property. "When an appellant contends the evidence is insufficient to support a judgment . . . or factual finding, we apply the substantial evidence standard of review. . . . '[W]e are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' " (*Cahill, supra,* 194 Cal.App.4th at pp. 957-958.) An appellate court does not reweigh evidence, but rather defers to the trier of fact. (*Id.* at p. 958.)

As noted in the statement of decision, Capabianca returned a substantial amount of Rockey's property "within a relatively short period of time." In addition, Capabianca later went through each room in her house, with help from her friends, to document and gather anything of Rockey's that had not been collected by ACE the first time around. Capabianca also made an offer during mediation efforts to give back any and all of

9

Rockey's belongings that she had in her possession. This offer supports the finding that she did not purposefully or intentionally try to keep his property from him.

Rockey contends that a finding of conversion supports a damage award of the market value of the property plus interest. However, this is not the case where the property has been returned to its rightful owner. (*Krusi v. Bear, Stearns & Co.* (1983) 144 Cal.App.3d 664, 673.) "Where . . . one recovers his property which had been unlawfully taken from him, he is considered as having received it in mitigation of damages, and the measure of damage . . . is the expense of procuring its return with interest." (*Beetson v. Hollywood Athletic Club* (1930) 109 Cal.App. 715, 722.)

As previously stated, Capabianca testified that she no longer had any of Rockey's property, save the couple of items she was more than willing to return to him or his agent. The court's award of $2,500 is over $1,000 more than Rockey paid to have his property packed and stored for him by ACE.

In addition, the record shows Rockey struggled to provide a consistent market value of his allegedly missing property, as evidenced by the ever-changing totals he gave the court. He first speculated his belongings were worth $25,000. However, he later changed it to $49,000, nearly a 100 percent increase over his previous estimate. These numbers were only his estimates, as the record shows he had no receipts, catalogs or other information corroborating the actual market value of the items. While it is not the job of this court to reweigh evidence, it is still the rule that no matter what the measure of damages, any injury that is " 'speculative, remote, imaginary, contingent, or merely

10

possible cannot serve as a legal basis for recovery.' " (*Lueter v. Cal.* (2002) 94 Cal.App.4th 1285, 1302.)

For all of the above reasons, we conclude that substantial evidence supports the nominal damages awarded to Rockey for his conversion claim.

III

*Intentional Infliction of Emotional Distress Claim*

Rockey contends the court erred in awarding Capabianca damages for her IIED claim because there was insufficient evidence to show that he actually caused her injury. We previously stated in *Spackman v. Good* (1966) 245 Cal.App.2d 518, 533 that the issue of causation in actions for infliction of emotional distress is one of substantial evidence. It calls for adequacy of proof in the specific case, *rather than* in the particular class of injury. Because the element of actual cause is a question of fact, the court's finding on this element is entitled to considerable deference. (See *Slaughter v. Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1250.) Applying the substantial evidence standard of review, we conclude Rockey failed to prove the evidence below was inadequate to support the court's finding.

Rockey's main argument for insufficient evidence is that the court refused to "permit further examination" of Capabianca's testimony that her grandson was dying around the same time she was dealing with Rockey's claim of brain cancer. However, Civil Code section 128 states that "every court shall have the power . . . to provide for the orderly conduct of proceedings before it." (§ 128, subd. (a).) This surely empowers the court to prohibit a party from turning the trial into a "fishing expedition," especially

11

where the examining party has not conducted any meaningful pretrial discovery on the subject, thereby wasting the court's time and resources.

Regardless of whether or not Rockey was able to further examine Capabianca about her ill grandson, substantial evidence supports the court's finding of IIED. Under the substantial evidence standard, even overwhelming evidence by the appellant must be disregarded if there is even the slightest evidence by the respondent that will sustain the court's finding. (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 849.) The testimony of one witness, if credible and believed by the trier of fact, is typically enough to support the court's judgment. (*Ibid.*)

Here, at trial, Capabianca's friend, Debbie Jackson, testified that Capabianca actually believed Rockey had brain cancer and was an "[emotional] wreck" after learning about his condition. Dr. Padilla, Capabianca's chiropractor, also testified regarding research showing that stress can cause a person's back to go out, and that he believed this to be what happened to Capabianca. In addition, Capabianca herself testified that she already had two friends battle brain cancer, so she knew what Rockey would be going through and immediately refrained from her prior plan to force him to move out.

Moreover, in its statement of decision, the court stated that it found the testimonies of Capabianca, Dr. Padilla and Jackson credible and believable. The court also stated that its finding regarding Capabianca's injury stemmed directly from its belief in Dr. Padilla's testimony.

Based on this record, we conclude that substantial evidence exists for the court's finding that Rockey actually caused Capabianca's IIED.

12

DISPOSITION

The judgment is affirmed. Capabianca is awarded her costs on appeal.


PRAGER, J.*

WE CONCUR:


HALLER, Acting P. J.


McINTYRE, J.

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.