Filed 11/20/25  Richardson v. Geater CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT RICHARDSON,<br><br>　　Cross-complainant and<br>　　Appellant,<br><br>　　　　v.<br><br>JASON GEATER,<br><br>　　Cross-complainant and<br>　　Respondent. | G064919<br><br>(Super. Ct. No. 30-2022-01247955)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott Steiner, Judge. Reversed and remanded with instructions.

Robert Knudsen, Attorney at Law and Robert E. Knudsen for Cross-complainant and Appellant.

Law Offices of J. Luke Hendrix and J. Luke Hendrix for Cross-complainant and Respondent.

*　　　*　　　*

Jason Geater sued Robert Richardson for conversion of a sports car Geater had placed with a dealer on consignment. The trial court found Richardson's purchase of the sports car from the dealer was not completed under the requirements of the Vehicle Code, and was not done in good faith or in the ordinary course of business. Therefore, the court found Richardson had converted the sports car, ordered that title and possession be given to Geater, and awarded damages to Geater.

We conclude substantial evidence supports the trial court's finding that Richardson was liable for conversion. However, the trial court erred by awarding Geater both possession of the sports car and its value as damages. It appears the parties failed to advise the trial court that such a double recovery was not permitted under the relevant law. Therefore, we reverse the judgment and remand the matter to the trial court to enter a new judgment consistent with the holding of this opinion.

FACTUAL AND PROCEDURAL HISTORY

This case involves title to and possession of a 2020 McLaren 720S car (the Vehicle). Car and Driver magazine described the McLaren 720S as a "supercar" with "the performance of a Formula 1 race car and the body of a fighter jet." (Stafford, *2020 McLaren 720S*, Car and Driver <https://www.caranddriver.com/mclaren/720s-2020> [as of Nov. 10, 2025], archived at <https://perma.cc/7NTD-AH7F>.) Geater purchased the Vehicle in 2019 with financing from Ally Financial (Ally); Geater was the registered owner and Ally held a lien against the Vehicle. Geater placed the Vehicle for a consignment sale with Lotus of Upland (Lotus), a car dealership. The terms

2

of the consignment sale agreement gave physical possession of the Vehicle to Lotus, set $335,000 as the lowest price Geater would accept, and required Lotus to notify Geater of all offers.

In December 2020, Richardson took possession of the Vehicle from Lotus, without notice to or consent from Geater. Richardson contends he purchased the Vehicle from Lotus for $375,785; rather than cash, Richardson "paid" Lotus by trading in two other cars and an airplane. Title was never transferred to Richardson and he never registered the Vehicle in his name. Richardson paid no sales tax and did not file paperwork to avoid payment of taxes for an out-of-state purchase. Neither Geater nor Ally received any money from the alleged sale of the Vehicle. The parties stipulated that the value of the Vehicle at the time Richardson took possession was $350,000.

In September 2021, a task force comprised of the California Department of Motor Vehicles (DMV) and local law enforcement took possession of the Vehicle from Richardson and stowed it at a tow yard pending resolution of the parties' claims. Geater eventually paid off the loan from Ally.

Ally initiated the instant litigation. Richardson filed a cross-complaint against Geater to quiet title to the Vehicle. Geater then filed a cross-complaint against Richardson to quiet title to the Vehicle and for conversion. Other causes of action and other parties were dismissed before trial. Ally and the DMV remained nominal parties but did not participate in the trial. Ally agreed to deliver title to and the DMV agreed to deliver possession of the Vehicle as directed by the court.

After a bench trial, the trial court found Geater was the owner of the Vehicle and was entitled to title to and possession of the Vehicle. The court also awarded Geater $485,000 in damages for conversion, consisting of

$350,000 for the value of the Vehicle, $85,000 in interest, $35,000 for the cost of the private investigator hired by Geater to locate the Vehicle, and $15,000 for insurance. The trial court issued a statement of decision and issued judgment in Geater's favor and against Richardson.

Richardson timely appealed.

## DISCUSSION

### I.

### STANDARD OF REVIEW

"'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.) It is the province of the trier of fact to make credibility determinations. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926.)

### II.

### SUBSTANTIAL EVIDENCE SUPPORTED THE JUDGMENT IN FAVOR OF GEATER ON THE CONVERSION CAUSE OF ACTION.

"'"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's

4

conversion by a wrongful act or disposition of property rights; and

(3) damages.”’” (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) “‘“Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant’s good faith, lack of knowledge, and motive are ordinarily immaterial. [Citations.]” [Citation.] The basis of a conversion action “‘rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action.’ [Citations.]” [Citation.]’ [Citations.]” (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208–209.)

Richardson contends the trial court erred in finding a conversion because Geater voluntarily gave possession of the Vehicle to Lotus; Lotus sold the Vehicle to Richardson; and, under the terms of the consignment agreement between Geater and Lotus, Lotus was not required to pay Geater for 20 days. Richardson claims his possession of the Vehicle was not tortious because Lotus was authorized by Geater to sell the Vehicle. This ignores the trial court’s findings that (1) there was no sale to Richardson pursuant to the Vehicle Code, and (2) Richardson was not a good faith buyer who purchased the Vehicle in the ordinary course of business.

The trial court concluded that the Vehicle Code, rather than the Commercial Code, applies to the sale of vehicles. We agree. “Vehicles, although goods, are excluded from the scope of division 2 of the California Uniform Commercial Code because their sales are regulated by the Vehicle Code. [Commercial Code s]ection 2102 provides that division 2 ‘does

5

not . . . impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.' The California Code comment explains, 'This section would also exclude certain special statutes pertaining to sales to unique groups of buyers; for example, the provisions of the Vehicle Code relating to sale of and recording of sale of motor vehicles.' [Citation.] The transfer of title to a vehicle registered in California is accomplished under Vehicle Code section 5600: 'No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements: [¶] (1) The transferor has made proper endorsement and delivery of the certificate of ownership to the transferee . . . and the transferee has delivered to the department . . . the certificate . . . '; or '(2) The transferor has delivered to the department . . . the appropriate documents for the registration or transfer of registration of the vehicle . . . .' [Citation.]" (*Quartz of Southern California, Inc. v. Mullen Bros., Inc.* (2007) 151 Cal.App.4th 901, 907–908.) Substantial evidence supports the trial court's finding that title was not transferred under the requirements of the Vehicle Code. Geater never endorsed or delivered a certificate of title to Richardson; neither Geater nor Richardson delivered documents to transfer the Vehicle to the DMV or to the relevant Arizona department; no taxes were paid for the sale of the Vehicle in Arizona or California.

The trial court also found that, even if the Commercial Code applied, Richardson was not a good faith buyer and the alleged sale of the Vehicle was not in the ordinary course of business. The Commercial Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing" (Cal. U. Com. Code, § 1201, subd. (b)(20)), and defines a "buyer in ordinary course of business" as "a

6

person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. . . . A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale" (*id.*, § 1201, subd. (b)(9)).

Again, substantial evidence supports the trial court's findings. Richardson acquired the Vehicle from Lotus in exchange for trade-ins of a 1990 Ferrari Testarossa, a 2018 McLaren, and an airplane. At that time, however, Richardson did not have title to the 2018 McLaren. Richardson never tendered to Lotus the certificate of title to the Ferrari. Lotus credited Richardson with $55,000 toward the purchase of the Vehicle based on the value of the airplane. However, Richardson never transferred title or possession of the airplane to Lotus; Lotus later said it did not want the airplane; and Richardson could not prove he ever paid Lotus to make up for the value of the airplane on the deal for the Vehicle. Richardson testified Lotus promised he would receive title to the Vehicle within two days after the purchase, but a certificate of title was never provided.

Geater's expert witness testified it was outside the ordinary course of business: (1) for a car dealership to allow a customer to retain possession of title to a vehicle which they are trading in toward the purchase of another vehicle; (2) for a car dealership to accept an airplane in trade for an automobile; (3) for a car dealership to deliver a vehicle to another state without a bill of lading, which was not in the documents provided to the

7

expert; and (4) for a car purchaser to wait nine months to receive title to the vehicle, or to fail to transfer title, register the vehicle, or otherwise submit appropriate transfer paperwork to the DMV. All of the foregoing supports the trial court's finding Richardson was not a good faith buyer.

Richardson argues he is not liable for conversion because Geater never demanded possession of the Vehicle from him. Richardson cites *Cerra v. Blackstone* (1985) 172 Cal.App.3d 604 for the proposition that his original lawful possession of the Vehicle could not become a conversion until Geater made a demand for possession and Richardson refused to turn over possession without justification: "Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully [citations] and of course so does unauthorized sale." (*Id.* at p. 609.) This argument presupposes that the original possession by Richardson was not a conversion. However, as discussed *ante*, substantial evidence supports the trial court's finding that there was a conversion at the time Richardson took possession of the Vehicle, so there was no need for Geater to make such a demand.

III.

THE TRIAL COURT ERRED BY AWARDING GEATER TITLE TO AND POSSESSION OF THE VEHICLE AS WELL AS THE VALUE OF THE VEHICLE.

The judgment in this case quieted title to the Vehicle in Geater, and awarded damages to Geater in the amount of $485,000, including $350,000 for the (stipulated) value of the Vehicle at the time Richardson acquired possession. The trial court erred by awarding Geater both possession of the Vehicle and the value of the Vehicle in damages.

There are two statutes that set out the available damages for a conversion claim: "The detriment caused by the wrongful conversion of

8

personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property." (Civ. Code, § 3336.) "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention. If the property has been delivered to the plaintiff, and the defendant claim[s] a return thereof judgment for the defendant may be for a return of the property or the value thereof, in case a return cannot be had, and damages for taking and withholding the same." (Code Civ. Proc., § 667.)

A party suing for conversion may recover possession of the converted property or the value of the converted property, but not both. (*National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 418–419 [party may recover property or value, but not both]; *Krusi v. Bear, Stearns & Co.* (1983) 144 Cal.App.3d 664, 673 [double recovery barred; conversion damages must be reduced if the plaintiff recovers the property]; *Allstate Leasing Corp. v. Smith* (1965) 238 Cal.App.2d 128, 132 [remedies for wrongful exercise of dominion of property "include *specific recovery* of the property, *or its present value*, plus damages for the period of its detention" (italics added)]; *Ross v. Sweeters* (1932) 119 Cal.App. 716, 721 [damages under Civ. Code, § 3336 may be recovered "'only where the property is not returned or recovered'"]; *Beetson v. Hollywood Athletic Club* (1930) 109 Cal.App. 715, 722 ["Where, however, one recovers his property which had

been unlawfully taken from him, he is considered as having received it in mitigation of damages, and the measure of damage, in the absence of special damage, is the expense of procuring its return with interest"].) It appears that neither party brought this rule of law to the attention of the trial court.

Geater argues Richardson forfeited this issue by failing to raise it in the trial court. ""As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.""" (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936.) "The general rule against new issues is subject to an exception that grants appellate courts the discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence. [Citations.]" (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1237–1238.)

This case presents a question of election of remedies, which meets the *Esparza v. KS Industries, L.P.* criteria for consideration on appeal. Geater had every right to request both possession of the Vehicle and its value, but could not obtain both. "'Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment.'" (*Baker v. Superior Court* (1983) 150 Cal.App.3d 140, 144.) The issue of a potential double recovery by Geater did not technically arise until after the judgment was entered, and Richardson's failure to address it before that time did not cause a forfeiture.

Geater also contends the determination whether the trial court erred by granting a double recovery requires "the production of additional evidence regarding the current value of the [Vehicle]." We disagree. Whether the trier of fact can award a double recovery is a legal issue, not a factual one.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with instructions to enter a new judgment awarding Respondent Geater title to and possession of the Vehicle, as well as damages consisting of interest, money expended in pursuit of the Vehicle, and any other damages permitted by Code of Civil Procedure section 667 and/or Civil Code section 3336, other than the value of the Vehicle at the time of the conversion. Because each party prevailed in part on appeal, in the interests of justice, neither side shall recover costs on appeal.


BANCROFT, J.*

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


11